VERPLANK and others *vs.* THE MERCANTILE INSURANCE COMPANY OF NEW YORK, and BARKER.

A party, under the privilege of amending, is not to introduce matter which would constitute a new bill.

Amendments can only be granted when the bill is defective in parties or in prayer for relief, or in the ommission or mistake of a fact or circumstance connected with the substance but not forming the substance itself, nor repugnant thereto. The latter part of this principle applies to all pleadings in equity.

Amendments to pleadings which are sworn to, are allowed with great caution.

Material and substantive matter and statements, allegations and charges, which have been sworn to, cannot be stricken out; they are to be corrected by the addition of explanatory or supplemental statement, or additional answer. This regulation holds as well in ordinary sworn bills, as in those where injunctions are outstanding.

*It seems*, that the complainants, and not their solicitor, ought to have sworn to the truth of the proposed amendments. Also, that the information upon which the new matter was founded, had come to their knowledge since the filing of the original bill.

A party who appears in person, and who is not an officer of the court, has no right to costs.

1831.

VERPLANCK
v.
MERCANTILE
INS. CO.

IN this case, *Ogden Edwards*, Esq. as Vice-Chancellor of the first circuit, had granted a general injunction, and allowed of the appointment of a receiver. Appeals were had; and by an order of the Chancellor, dated at Albany, on the twenty-first day of June, 1831, the orders granting the injunction and appointing a receiver were vacated, with costs. The following is a part of the Chancellor's order:—"*It is ordered*, that the "said orders granting a general injunction in the said bill and "appointing a receiver in this cause be and the same are hereby "reversed and vacated, with costs on the appeals therefrom, to "be paid by the respondents to the solicitor of the appellants. "*And it is further ordered*, that the proceedings be remitted "back to the Vice-Chancellor of the first circuit; with permis- "sion to the complainants to apply to the said Vice-Chancellor "to amend their bill of complaint so as to make the corporation "of the Mercantile Insurance Company defendants therein, (*a*)

July 13, 1831.

*Practice.*
*Amendments.*
*Parties :*
*(Note a.)*
*Costs.*

(*a*) The prayer in the original bill went against the *President and Directors* of the Mercantile Insurance Company of New York, whereas the style of the Company, by the act of incorporation, (April 10, 1818,) was, *The Mercantile Insurance Company of New York.* In the opinion which his Honor the Chancellor gave, in relation to setting aside the orders for the injunction and a receiver, he says, " The first objection is, that although the order appointing a receiver " purports to have been entered in a suit against ' The Mercan- " tile Insurance Company of New York,' under which order the " appellants have been deprived of the possession of their property, " they were not, in fact, parties defendant in the bill ; as the prayer " of process was only against the officers of the corporation. " The name of the corporation is as before stated. The prayer for " process is, that the subpœna may be directed to the president and

" and otherwise as they may be advised, upon due notice to the
" solicitor of the appellants, and of Jacob Barker, of such applica-
" tion ; and upon such amendment being made, an order may be
" entered, directing the defendants to show cause before the said
" Vice-Chancellor, at such time and upon such notice as he shall
" direct, why a general or other injunction should not be granted
" and a receiver be appointed," &c. &c.

---

" directors of the said company.  This was undoubtedly owing to
" the mistake of the solicitor who drew the bill ; and who probably
" did not intend to make the president or directors, but only the cor-
" poration and Jacob Barker, parties to the suit.  The same mistake
" exists as to the prayer for the injunction ; and is also carried into
" the order granting the injunction.  So that the injunction in fact
" is neither against the corporation nor its officers, by their proper
" names.   As this objection is merely formal, I should not feel dis-
" posed to sustain it, if the difficulty could be obviated by an amend-
" ment.   As it now stands, it may deprive the appellants of a sub-
" stantial right.   It is somewhat doubtful whether they have the
" power to answer this bill.   It neither prays process against the
" corporation, nor calls upon them to answer.   For, by another
" singular oversight of the solicitor, that part of the bill merely
" prays the confederates may answer upon their corporal oaths.
" Whereas, the officers of the corporation, and not the company,
" are charged with confederacy ; and they only could put in their
" answer on their oaths.   It is well settled, that no persons are par-
" ties as defendants in a bill in chancery, except those against whom
" process is prayed, or who are specifically named and described as
" defendants in the bill.  (1 *Marsh. Ken. Rep.* 594.  2 *J. C. R.*
" 245.  2 *Dick. R.* 707.)  In *Elmendorf* v. *Delancey*, 1 *Hopk. R.*
" 555, Chancellor Sandford says, ' when it is uncertain who are
" complainants, or who are the persons called to answer, the suit is
" fundamentally defective, and if the parties are not clearly desig-
" nated, it is the fault of him who institutes the suit.'  In answer
" to this objection, it was suggested by the respondents' counsel,
" that it is a mere misnomer of the corporation, and can only be
" taken advantage of by a plea in abatement.   It cannot, however,
" in this case, be considered a misnomer.   The name of the

A petition, in the names of the complainants, was this day   1831.
presented to the court. It mentioned the suit; the appeals from
the orders before mentioned; and the reversal of those orders,   VERPLANCK
                                                                  *v.*
referring also to a copy of the Chancellor's order, which was MERCANTILE
annexed. Also, the necessity of amending their bill. The   INS. CO.
proposed amendments were set forth in a schedule. The pe-
titioners further shewed, that the additional facts contained in
the said amendments and schedules, so far as the same differed
from the original bill,had been discovered since the filing thereof,
and were truly stated, according to the best information and
belief of the petitioners. The prayer of the petition was in
these words:—" Your petitioners therefore pray leave to amend
" their said bill, by striking out that part of the said bill, after
" the words, *as by reference to the said act will more fully and*
" *at large appear*, in the sixth page of said bill, to the words
" *as in duty bound*," &c. in the twenty-third page thereof; and
" insert the proposed amendment hereto annexed, marked B;
" and that the said schedules referred to as such, be taken as
" a part of said amended bill ; and that one or more of the com-
" plainants be permitted to verify by oath, in the usual way,
" the said amended bill; or, for such other and further order in
" the premises as to your honor shall seem meet."

All the complainants resided within the city of New York :
but the petition was only signed and sworn to by their solicitor:
*Jurat :* "F. S. K., solicitor for the complainants in this cause,

---

" corporation and the substance of the charter is distinctly stated
" in the commencement of the bill, and the process is then prayed
" against the officers only. Besides, the appellants never had an
" opportunity to make the objection by plea in abatement or in any
" other form. As the true name of the corporation was stated, the
" objection appeared on the face of the bill, and no plea was neces-
" sary to bring the fact to the notice of the court." " The pro-
" ceedings must be remitted back to the Vice-Chancellor of the first
" circuit, with permission to the complainants to apply to him for
" leave to amend their bill, so as to make the corporation defendants
" therein ; and otherwise as they may be advised," &c.

"being duly sworn, says, that he has read the foregoing petition, "and knows the contents thereof: that the same is true of his "own knowledge, except as to the matters therein stated to be "upon his information and belief, and as to those matters he be- "lieves it to be true."          "F. S. K."   "Sworn, &c."

Mr. *S. Sherwood,* on the part of the petitioners.

The proceedings in this cause are sent back to the Vice-Chancellor's court, in order that the complainants may amend, by making the "corporation of the Mercantile Insurance Company "defendants therein, and otherwise as they may be advised." Our bill is sworn to; but no injunction exists.  We have proceeded correctly under the rule and practice of the court: Rule 43.   The cases of *Rodgers* v. *Rodgers,* 1 *Paige* 424, and *Whitmarsh* v. *Campbell,* 2 *ib.* 67, apply to suits where injunctions were granted.  They are here inapplicable.  We propose to amend by striking out nearly the whole bill; that is to say, striking out all of it save the heading and recital of the charter, and substituting a new statement, different phraseology, and adding to the charges.   We intend, by these amendments, to recast or remodel our bill.  We shall take out some immaterial parts; but our amending will amount to mere restatements and new facts.   The court is liberal in allowing amendments: *Mitf. Pl.* 53.; *Newl. Pr.* 80, 81.; 2 *Mad. Pr.* 368; *Coop. Pr.* 74, 75; *Beekman* v. *Waters,* 3. *J. C. R.* 410; *Luce* v. *Graham,* 4 *ib.* 171; *Renwick* v. *Wilson,* 6 *ib.* 81.

(Affidavits, which were intended to deny the truth of the matter contained in the proposed amendments, were read by the defendants' counsel.   But it was considered as being done, under and subject to objection.)

*Jacob Barker,* in person.

Mr. *D. Selden,* for the Mercantile Insurance Company.

The proposed amendments cannot be considered as sworn to at all.   The facts must have been, not only sworn to by all

the complainants, but they must also have shown that these
facts were unknown at the time of filing the bill; *Rodgers* v.
*same*, *supra*. No excuse appears for the not inserting the
matter in the bill: *Whitmarsh* v. *Campbell*, *supra*. The
amendments amount to a new bill; and therefore cease to be
amendments: *Lyon* v. *Tallmadge*, 1 *J. C. R.* 188. It is irregular
to strike out any part of a sworn bill, unless mistake appears.
There is to be no escape from perjury : *Jennings* v. *Merton
College*, 8 *Ves.* 79. The complainants ought to file a supple-
mental bill : *Dolder* v. *Bank of England*, 10 *Ves.* 284. The
matter intended to be inserted amounts to but one amendment,
and the opposite party must stand or fall by it, taken collec-
tively. It is, in principle, like an exception taken to a whole
report : *Hodges* v. *Salomons*, 1 *Cox's C.* 249; *Noble* v. *Wilson*,
1 *Paige*, 164.

Mr. *S. Sherwood*, in reply.

When the object can be obtained by amendment, a supple-
mental bill is not permitted : *Redes Tr.* 60. The 11th Rule of
1806. allowed amendments before answer, of course, in all
cases, and without costs ; while the 90th Rule of 1815. declares,
that no amendment, of course, shall be allowed to a sworn bill :
the 43d Rule of 1830. embraces these old rules, and adds, that
where the bill has been sworn to, special leave of the court
must be had and notice given to the opposite party, before
the amendments can be allowed. These rules do not essentially
alter the practice, except that notice is to be given. There is
no rule which has ever required the proposed amendments to
be sworn to in any way; and the cases of *Rodgers* v. *same*,
and *Whitmarsh* v. *Campbell* apply, expressly, to injunction
bills. It is useless to swear to the matter, until we know how
much of it will be allowed to be inserted. If we do so, we
shall swear twice to the same thing, (for it is true that we
mean to swear to the amended bill.) It is better to remodel
than obliterate the present pleading. Amendments are made
by expunging as well as by adding allegations: *Renwick* v.
*Wilson*, *supra*.

*1831.*

*VERPLANCK
v.
MERCANTILE
INS. CO.*

1831.
VERPLANCK
v.
MERCANTILE
INS. CO.
July 18.

THE VICE-CHANCELLOR. A motion is made on the part of the complainants, for leave to amend their bill, which was sworn to at the time it was filed, and upon which, *ex parte*, an injunction was granted and a receiver appointed. The orders allowing the injunction and appointing the receiver, were, upon appeal, reversed: with permission to the complainants to apply for leave to amend the bill, so as to make the corporation of the Mercantile Insurance Company defendants therein; and otherwise, as they might be advised.

The application to amend is accordingly made; and besides inserting the name of the company, the complainants propose to strike out the whole stating part of the bill, (except the recital of the charter,) the interrogating part and the prayer; and to insert, as a substitute, and by way of amendment—not a statement of new matter entirely—but a restatement of the original matter in a different phraseology; leaving out some of the allegations or portions thereof; introducing some new and additional matter; specifying, in some instances, dates and times where none were mentioned before, omitting the whole of the particular interrogatories, and restating the prayer of the bill, although, in substance and effect, the same as is contained in the original.

The question is, as this is a sworn bill, whether amendments can be admitted in this way and to the extent here proposed? In considering this question, it is necessary to distinguish between an amendment and matter which would constitute a new bill: for under the privilege of amending, the party is not to be permitted to make a new bill. Amendments can only be granted when the bill is found defective in proper parties, in its prayer for relief, or in the omission or mistake of some fact or circumstance connected with the substance of the case but not forming the substance itself. This is the principle laid down in *Lyon v. Tallmadge*, 1 *J. C. R.* 184; and it applies to all bills and to pleadings in general in this court. When it comes to be applied to injunction bills or to bills and answers which have been sworn to, other regulations adopted for the prevention of mischief are to be observed. Thus in *Rodgers v. Rodgers*, 1

1831.

VERPLANCK
v.
MERCANTILE
INS. CO.

*Paige's C. R.* 424, upon an application to amend an injunction bill, the Chancellor held, that the amendments proposed must be merely in addition to the original bill and not inconsistent with it; and the complainant must swear to the truth of the matter proposed to be inserted by way of amendment and show a valid excuse for not having incorporated it in the original bill. And the latter branch of this rule was strictly adhered to in the subsequent case of *Whitmarsh* v. *Campbell,* 2 *Paige's C. R.* 67. It is contended, however, that the rule in these cases, is to be confined to injunction bills, that is to say, to cases where an injunction has been issued and is actually pending and where the complainant asks for leave to amend without prejudice to the injunction—as was the case in *Rodgers* v. *Rodgers*—and that it does not apply, where a bill has merely been sworn to and no injunction is outstanding upon it. But I apprehend it is not to be thus limited in its application; and that the delay which would be occasioned by allowing amendments after an injunction and in some instances after an answer put in, is by no means the only reason for the rule.

Another and more important reason for holding a strict hand over the privilege of amending sworn pleadings is, to check all temptation to falsehood or perjury, by not permitting a party who has once made his allegations or statements under oath to come in at any time and expunge the same or substitute other and different matter. If, indeed, it clearly appears there has been a mistake arising from inadvertency or accident, and that the statement is not what the party thought it was or intended it should be at the time of swearing to the pleading, the court will permit him to amend upon discovery of the error. But, even in such cases, the court will not suffer the amendment to be made by striking out any part of the pleading. It can only be done by introducing an additional or supplemental statement explaining and correcting the former erroneous one. Thus, in *Jennings* v. *Merton College,* 8 *Ves.* 79, a motion was made to take the answer off the file, upon the ground of a mistake which had occurred in it. The Lord Chancellor refused the application, saying, the safest way would be to file an additional answer,

1831.

VERPLANCK
v.
MERCANTILE
INS. CO.

giving the explanation so that the court might have the whole before it, without letting any thing go out of the record, And this course was sanctioned in the subsequent cases of *Dolder* v. *The Bank of England*, 10 *Ves.* 284, and *Wells* v. *Wood, ib.* 401 ; and several others. The same question came under consideration in *Bowen* v. *Cross*, 4 *J. C. R.* 375, where Chancellor Kent, upon a review of all the English cases, held it to be not only settled, but the safer and wiser practice, not to permit any thing to be struck out of an answer, even where a mistake was clearly shown, but (for the purpose of correcting it) to give the party leave to file a supplemental or additional answer—thereby leaving to the parties the effect of what had been sworn before, with the explanation given by the supplemental answer. A perusal of his opinion in that case will show the extreme caution with which the court permits even this to be done. He says, " there can be no doubt that the application ought to be " narrowly and closely inspected, and a just and necessary case " clearly made out."

If then, as respects amending an answer, the court is to be thus watchful to prevent any thing from being stricken out, though introduced unintentionally and through mistake, is it not necessary to be equally particular in regard to a sworn bill, which a complainant may seek to amend in an important and material part? In some respects, the comparison may not hold good: for the occasions are much more frequent for amending bills than answers—and therefore a greater latitude should be given in the former cases. Yet it will be perceived, that the occasions for amending bills, in which it is necessary to exhibit a greater indulgence, generally arises from a discovery of a defect in the proper parties, in the prayer for relief, or in the omission of some fact or circumstance rendered necessary to be introduced in consequence of the defendant's answer (and which a complainant may be permitted to introduce, especially where the defendant, upon exceptions, is bound to make further answer ;) and where the matter for amendment does not affect the substance of the case made by the bill. Where the object of the amendments is to alter or change the substance of the bill, I hold that the same strictness should be

required as where an answer is in question. The complainant may amend by introducing new parties; and by making such new charges, allegations and statements, in addition to the former, as he can verify by his oath, and which are not inconsistent with his former allegations. These are the true and legitimate purposes for which leave to amend may be granted; and it cannot be extended, with any sort of propriety, to the striking out of former allegations and substituting others, although they may not be very different in substance and effect. It has been urged that *Renwick* v. *Wilson*, 6 *J. C. R.* 81, contains a different doctrine, and that Chancellor Kent, if he has not so decided, has there, at least, sanctioned the idea that parts of a sworn bill may be expunged for the purposes of amendment—and that too, without prejudice to an injunction, provided the part expunged does not constitute the ground upon which the injunction rests. I do not, however, understand him as going that length. On the contrary, he expressly limited the amendments, which he permitted to be made in that case, to additions to the bill: by "inserting such additional state- "ments, matters and charges as the plaintiff should be advised "were material;" and this was done without prejudice to the injunction. At the same time, he says, he could not allow any part of the bill to be stricken out, without a previous specification of the parts intended to be omitted. It would seem from this expression, he considered the court might, in the exercise of its discretion, permit an amendment by striking out: but I apprehend this permission should in no case be extended beyond the mere formal parts of a bill, and that the Chancellor in that case did not mean to be understood as intimating an opinion that any material or substantial allegation of fact, sworn to, might, at the instance of the party who made it, be withdrawn or obliterated, so that, if guilty of perjury, no vestige of it might remain.

No court of justice or equity ought, for one moment, to tolerate a practice, which would hold out to the designing an opportunity to commit and yet escape from this

crime. By thus adverting to the danger of such a practice, I do not wish to be understood as reflecting in the slightest degree upon the complainants. I am bound to believe and do believe the present application is made from pure and honest motives, the better to enable them to present their case. My object in these observations is merely to show, that if the bill is permitted to be amended to the extent proposed, it will be establishing a precedent dangerous in practice—and the consequences of which might be a reproach to the court. The only safe and true rule, in my judgment, is the one adopted in *Rodgers* v. *Rodgers;* and I see no reason for confining its application to the case of an injunction bill having a writ of injunction outstanding. It applies, with equal force, to all cases of sworn bills; and I must, therefore, hold that no bill which has been sworn to in this court can be amended by striking out the whole or any portion of the stating part and recasting it in different phraseology, with some omissions of former charges, and the addition of some new matter. This, instead of being an amendment in the technical sense of the term, would be converting it into a new bill: and which the complainants can resort to, if they please.

Other objections have been urged against the present application, namely, that the proposed amendments are not verified by the oath of the complainants or of any of them; and also, that the complainants have not sworn as to the information (upon which the new matter is founded) having come to their knowledge since the filing of the original bill. The petition is verified by the affidavit of the solicitor only ; and no reason is given, why the complainants or some one of them have not sworn to it. I am strongly inclined to think it is insufficient; and that, on this ground alone, the court would be compelled to deny the motion. I have thought it my duty, nevertheless, to examine the case and to express my opinion upon the other and principal question ; and the result is, that I cannot give the complainants permission to amend, in the way proposed. All I can do upon this application is, to let them amend by insert-

ing the corporate name of the Mercantile Insurance Company in the place of the President and Directors: but it must be upon the payment of the costs of opposing this motion.

The amendment was made accordingly.

As to the costs of opposing the above motion:

Mr. *Jacob Barker* presented to the Vice-Chancellor, as taxing officer, a bill of costs on his own part. His honor decided, he could not tax Mr. Barker any costs for his opposition, he not being an officer of the court: the Revised Statutes having made provision only for fees to "counsellors" and "soli-"citors." 2 *R. S.* 629, 630.