# SUPREME COURT.

CHARLES LULING and others agt. THE ATLANTIC MUTUAL INSURANCE COMPANY.

Where there is a specific agreement made between any *policy holders* of a mutual insurance company and the *company,* that the premiums of the former shall be paid in *gold,* and the losses shall be paid by the latter in *gold,* the company on declaring its *dividends,* are bound to allow such policy holders a certificate of their share of the profits in accordance with a *gold standard* as compared with currency .

A *notice* issued by the company to the effect that the dealers making insurances payable in gold, were to participate with others in the earnings, and that they would be computed and made payable *in currency*, and the delivery by the company, and acceptance of the certificates of such earnings by such policyholders, under said notice, does not affect the legal bearing of the contract, nor make the certificates a bar to an action by the policy holders against the company to correct the account upon which they were based and for a proper readjustment. The certificates were good to the extent which they provided for only.

While a court of equity will not interfere with the officers of a corporation while acting within the scope of their powers and authority, yet when it is apparent that they have erred and wronged some of its stockholders, it should see that injustice has not been done. When they undertake to declare a dividend, they are bound to make it equal and just among all who are interested.

*New York Special Term, June,* 1865.

ACTION to compel the defendants to adjust their dividends, &c. The cause was tried at the special term, held in New York, in June, 1865. The facts, so far as material, appear in the opinion of the court.

S. P. NASH, *for plaintiffs.*
D. LORD, *for defendants.*

MILLER, J. The defendants issued policies to the plaintiffs, the premiums on which were paid in gold, and the losses on which were payable in gold. Independent of any specific agreement, the ordinary currency of the country would be considered as the basis upon which the policies were issued, and upon which any settlement of losses incurred should be made, and profits realized. As there was a special contract here, the premiums being paid in gold, and the losses payable in the same currency, the question arises whether the company at the time it declared the dividends should not take that fact into consideration, and allow the plaintiffs a certificate for their share of the profits in accordance with a gold standard as compared with currency. They had contributed a larger amount in proportion in the payment of premiums, and it would certainly seem but equitable that they should receive a return in the same ratio. To illustrate : with gold ranging over

Luling agt. The Atlantic Mutual Insurance Co.

two hundred, as compared with currency, the plaintiffs would have paid twice as much in proportion as those who took out the ordinary policies. And if the company should convert the gold premiums into currency, then the gold dealers would contribute far more than the dealers in currency policies. And those holding that class of policies would be largely benefitted at the expense of the holders, of policies which were payable in gold. The operation of such a rule would appear to be unjust, and contrary to the fair intendment of the contract made between the parties, that the transaction was to be conducted upon a gold basis, and I think that unless there is some legal obstacle in the way of correcting the error into which the defendants have fallen in issuing their certificates, the dividends should be readjusted upon a different and a more equitable footing.

By the thirteenth section of the defendants' charter, after ascertaining the net profits in the mode therein prescribed, on risks marked off, the board of trustees are authorized to issue certificates of a certain per centum on the premiums received for such marked off risks, to the persons in whose names the policies of insurance were originally made, or to their representatives. Under this provision of the charter, I see no difficulty in apportioning the dividends in accordance with the amounts paid by policy holders, whether in gold or in currency, and as the company has adopted two different currencies in the transaction of its business, there is no good reason why both of these should not be considered in the disposition of the profits. It is said that the nature of the business of the defendants is in opposition to the claim of the plaintiffs. It is true that there was no positive agreement by which the amount of premiums paid were to be credited at a different amount from that expressed in the policy, but as gold was of a higher value than currency, it is quite evident that the company reaped an additional benefit from the premiums received in gold. They agreed to pay the losses in

gold, securing a corresponding amount for thus increasing their liability. The contract was virtually the same as if they had insured payable in currency for a larger amount, and received a larger premium. Suppose gold was worth two hundred per centum, a policy for $10,000 would be equivalent to a policy of $20,000 payable in currency; the holder of the currency policy, if currency alone was the basis, would receive twice as much from the profits as the holder of a policy payable in gold, when in fact the holder of the gold policy had paid as much as the former.

Although the earnings from both gold and currency policies were equally liable for losses, yet as one contributed more in proportion towards the payment of losses than the other, there is no valid reason why they should not stand upon an equal footing. The fact that the company issued two kinds of policies, receiving premiums in two different currencies, necessarily obligated its officers to pay losses in two different currencies. Its business was, therefore, divided between these two classes of cases, and in thus dividing it there would be no difficulty in making adequate and proper allowances to each class of policy holders in the distribution of its profits. Nor do I think that it was essential that there should be an express stipulation to the effect that those who paid gold premiums should be entitled to a larger amount in dividing the profits than those who paid in currency. This result would necessarily follow from the nature of the contract itself. The contract was made entirely upon a gold basis. The defendants reaped the benefit of it, in receiving a large amount for premiums, and were not liable to pay any greater losses in proportion than they would have been on currency policies. There is no ground, therefore, to uphold the position that the holders of policies payable in gold should not be benefitted in the same ratio. They incurred the risks, and why should they not receive an adequate and corresponding return for so doing? The company received the benefit of the gold

premiums, and why should they not pay in the same proportion.

I do not see that there is anything in the nature of the defendants' business, which in any way conflicts with the plaintiffs' claim for equal and fair dealing with other policy holders. I think that the delivery and acceptance of the certificates of earnings in April, 1864, for the earnings of the year 1863, is not a bar to the plaintiffs' claim. The certificates would be good to the extent which they provided for, but would not preclude the plaintiffs from correcting any error which there might be in the mode of computation in fixing the amount to which the plaintiffs were entitled. The plaintiffs were not bound to return these certificates, or run the hazard of being precluded from obtaining what they were legally entitled to. I am not aware of any rule which would make the receipt and retention of certificates of this kind a bar to an action to correct the account upon which they were based, and to readjust the amounts among those who were entitled to be benefitted. The plaintiffs simply ask for a readjustment, so that they may receive all to which they were fairly and honestly entitled, and thus correct the alleged error in the issuing of the certificates. The notice issued by the company in October, 1863, to the effect that the dealers making insurances payable in gold were to participate with others in the earnings, and that they would be computed and made payable in currency, does not affect the legal bearing of the contract, or alter the legal intendment arising from it. There may, perhaps, be some question whether the phraseology of the notice can have any effect upon the question now considered, as I do not understand that the point made is that the certificates were payable in currency alone, but that amounts for which they provide is insufficient, and not in proportion to the premiums in gold paid by the plaintiffs. The last remark will apply to the indorsement on the policy of 1864, in reference to the payment

of profits in currency. Neither the notice or the indorsement referred to, nor the dealings of the plaintiffs with the company, can, in my judgment, alter the plain import of the contract, which is, that the plaintiffs were to stand relatively the same as other holders of policies, and that they were entitled to equal rights with them in the distribution of the profits realized.

The question whether the court has the power to review the action of the officers of the company in the conduct of its business, is one of considerable importance, and perhaps not entirely free from embarrassment. The plaintiffs in this case simply ask that they may be put upon an equal footing with other dealers, claiming that the officers of the company have adopted a wrong principle in issuing certificates. While a court of equity will not interfere with the officers of a corporation while acting within the scope of their powers and authority, yet when it is apparent that they have erred and wronged some of its stockholders, it should see that injustice is not done. When they undertake to declare a dividend, they are bound to make it equal and just among all who are interested. They would have no right to divide their profits among a few particular friends. Neither would they have authority to say that one class of stockholders should receive a larger amount of the profits, or a greater dividend than others. They are but the agents of the stockholders. The profits belong to the stockholders, and they must apportion them fairly and justly, with a due regard to the interests of each and all of them. They cannot make an unjust discrimination, giving one an advantage over another. If they do this they exceed their powers, and the courts have a right to interpose their authority to prevent it. The question is not whether the court should interfere with the amount of gold retained, or the disposition of it, nor whether they should divide all their earnings, or supervise the management of the company in the exercise of a sound discretion in con-

trolling its affairs; but whether, after having determined to divide a particular amount of profits among those who were interested, it shall adjust these profits upon a just and proper basis, and do exact and even handed justice to all who have contributed towards the accumulation of these profits. If they have made a wrong adjustment, shall it not be corrected and rectified? Upon such a question it seems to me that there can be no doubt as to the power of the court, and the moment it is ascertained that a wrong has been perpetrated, and injustice done, it should interpose its authority to remedy the evil, and to restore to the parties who have been injured what legitimately and fairly belongs to them.

The next question which presents itself, is as to the right of the plaintiffs to bring this action on their own behalf, and on the behalf of other shareholders who are interested with themselves in the same question, and who may elect to come in and contribute to the expense of the action with the plaintiffs, and be bound by the judgment. So far as the contracts are similar and partake of the same character, I incline to the opinion that the plaintiffs may file a bill in behalf of themselves and all others standing in the same situation. (*Robinson* agt. *Smith*, 3 *Paige*, 233; *Walker* agt. *Devereux*, 4 *Paige*, 256.) Of course this cannot embrace those who have no community of interest with the plaintiffs, or who by contract or circumstances occupy a different position from the plaintiffs. They ask to bring in those occupying the same position as the plaintiffs do, and should be limited to these alone.

After a careful examination of the various questions presented in the case, I am satisfied that injustice has been done the plaintiffs which entitles them to redress. The plaintiffs were entitled to certificates for an increased amount, so as to place them on an equality with the holders of certificates for currency policies; and I think that, in accordance with the prayer of the complaint, the plain-

tiffs should be awarded dividend certificates proportioned to the amount valued in paper currency of the premiums received by the defendants in gold from the plaintiffs for marked off risks during the years 1863 and 1864, respectively—such valuations to be according to the average value of gold coin and paper currency between the 31st of December of each of said years and the day in the month of January, when the defendants did in fact make up their dividend statements. A referee must be appointed, to whom the defendants must render an account of the manner in which they have made up their statements of dividends for the years 1863 and 1864, and estimated their profits, and the statements of dividends re-adjusted in accordance with the prayer in the plaintiffs' complaint and the suggestions here made.

In the meantime, the defendants must be enjoined from redeeming any of the certificates issued for the year 1863, and from issuing any new ones for the year 1864, until they have corrected and re-adjusted the declarations of dividends made.