## SUPREME COURT.

### JAMES W. FISHER agt. THE WORLD MUTUAL LIFE INSURANCE COMPANY.

*Injunction and receiver — against a life insurance company — not granted.*

Where the object and scope of the plaintiff's complaint (he being a stockholder) are the forfeiture of all the corporate rights of the defendant — a life insurance company formed under the general law of 1853 — and an injunction asked for which will suspend its operations, under and by virtue of the thirty-ninth, fortieth and forty-first sections of 2d Revised Statutes, 484, Edmonds' edition, for violation of duty in making annual statements and other irregularities under its charter, it will be held bad on demurrer.

The exception contained in section 11 of the act of 1853 expressly excludes the application of the Revised Statutes to the violations of the act of 1853.

The remedy for any supposed violation, including such as the plaintiff alleges, is to be found under the act of 1853. That is the exclusive remedy in respect to annual statements, and in respect to every violation of the act.

*New York Special Term, March,* 1873.

DEMURRER by the defendant to the complaint.

*F. Culver,* for plaintiff.

*W. P. Prentice,* for defendant.

HARDIN, *J.* — The plaintiff, by his complaint, asks an injunction restraining all the corporate acts and business of the defendant, and the appointment of a receiver of its effects, "to collect, sue for and recover the debts and demands that may be due."

The scope and object of the bill are aimed at a forfeiture of all the corporate rights of the defendant, and an injunction is asked for, which will suspend its operations.

It was settled by ample authority in this state, prior to April 21, 1825, that the court of chancery possessed no such power or right of interference with corporations (*The Attorney-General* agt. *The Utica Ins. Co.*, 2 *Johnson's Ch. R.*, 371, *opinion by* KENT, *chancellor; Attorney-General* agt. *The Bank of Niagara*, 1 *Hopkins*, 354, *opinion by* SANDFORD, *chancellor*).

The last case was decided in March, 1825, and following its announcement came the act of the legislature of the 21st of April, 1825, which was adopted and incorporated substantially into the Revised Statutes, and is now found in thirty-ninth, fortieth and forty-first sections, in Edmonds' edition, 2 Revised Statutes, page 484.

The first case which was decided under the act of 1825 was that of the *Attorney-General* agt. *The Bank of Chenango* (1 *Hopkins*, 598); and in delivering the opinion in that case, chancellor SANDFORD took occasion to refer to the antecedent cases, and to declare that the *new power* granted by the act of 1825 was invoked and applicable. Following that case was *Verplanck* agt. *The Mercantile Insurance Co.*

The vice-chancellor granted, *ex parte*, an injunction, and appointed a receiver, and an appeal was taken to the chancellor, and the injunction was dissolved and the receiver discharged in June, 1831; and the case was remitted back to the vice-chancellor of the first circuit, with permission to the complainants to apply to him for leave to amend their bill, so as to make the corporation defendant (2 *Paige Reports*, 452).

In July, 1831, before the vice-chancellor (of the first circuit), the complainants presented a petition for leave to amend their bill (1 *Eds. Ch. R.*, 46, 47 *and* 48).

The vice-chancellor allowed an amendment, by inserting the corporate name of the Mercantile Insurance Company in the place of the president and directors.

The complainants having so amended their bill, in August, 1831, a motion was made by them, as *stockholders*, for an injunction to restrain the further operations of the company, and for the appointment of a receiver.

In the opinion of vice-chancellor McCoun the antecedent cases were referred to, denying the power of the court of chancery to interfere in such cases, prior to the act of 1825, under the *general equity* powers of the court, and the power of the court to superintend and exercise *visitorial powers* over corporations was declared to depend upon the thirty-ninth, fortieth, forty-first and forty-second sections of the Revised Statutes referred to (*supra*).

The Mercantile Insurance Company was not insolvent, and, therefore, the question to be examined was wholly dependent upon the alleged violation of the *act* of incorporation, or the violation of any other act of the legislature, binding upon said company.

The conclusion is reached then, that when the directors are alleged to have fraudulently dealt with the funds of the company, the remedy is not against the company in its corporate character, but against the directors by whom the fraud is committed (1 *Edwards*, 94).

It is approved in *Robertson* agt. *Bullions* (9 *Barb.*, 100, and 4 *Abbott* [*N. S.*], 107).

From the foregoing reference to the origin of the thirty-ninth, fortieth and forty-first sections of the Revised Statutes, and the authorities quoted, it will be seen that the right of the plaintiff in this case depends, as was supposed by his learned counsel, and stated in the argument, upon the sections quoted.

When these sections were passed by the legislature there was no general law in this state authorizing the formation of insurance companies.

After the adoption of the constitution of 1846, the first general law, authorizing the formation of such companies, was passed in 1849, April 10th.

That act was followed by an act of the legislature of 1851, amending the act of 1849.

Then came the act of 1853, chapter 463, entitled "An act to provide for the incorporation of life and health insurance companies, and in relation to agencies of such companies." The act of 1853, by its twenty-second section, expressly repealed so much of the acts of 1849 and 1851 as relate to life insurance companies.

The act of 1853 was amended in 1862, but it is not necessary here to give the amendments in detail.

The plaintiff alleges that the defendant was organized under the general act of 1853, and in pursuance of its provisions entered into the business now carried on by it.

It is, therefore, not necessary to look for any act or acts incorporating the defendant, for no such act or acts are to be found.

It cannot, therefore, be said that the defendant has, in the language of section 39 of the 2d Revised Statutes (*page* 484), " violated any of the provisions of its *act* or *acts* of incorporation."

But the thirty-ninth section of the Revised Statutes (*supra*) also provides for a case where an insurance company " shall have violated   *   *   any other act binding on such corporation."

It is not alleged that the defendant is insolvent, but, on the contrary, it is expressly alleged by the plaintiff that the defendant is wholly solvent.

It becomes important, therefore, to turn to the general act of 1853 and the amendments thereof, and to consider its provisions, and the allegations of the complaint in connection therewith.

The plaintiff alleges that the defendant, by putting $14,000 into its annual statement as cash paid to its stockholders as dividends or interest, in 1868, when, in fact, it never was paid, made a false statement.

Other allegations are made in the complaint in respect to

supposed irregularities and improprieties of the defendant in respect to its annual statements, which are claimed to be in violation of law.

By section 18 of the act of 1853 it is provided that " every violation of the act shall subject the party violating to a penalty of $500 for *each violation*, which shall be sued for and recovered in the name of the people, " &c.

By the twelfth section of the act of 1853, an annual statement is required, and its contents are prescribed. If, therefore, there has been a violation of the provisions of the act of 1853, by the defendant, in respect to its annual statement, the penalty therefor is prescribed by the act of 1853, in the terms of section 18, already quoted.

An action may be brought, in the name of the people, to recover $500, by the district attorney of the county in which the company is situated, and one-half of the penalty will belong to the " informer," and the other half to the treasury of the county.

It, therefore, is clear that the violations of the act of 1853, in respect to annual statements by the defendant, may be the subject of the action provided for by the eighteenth section of the act.

It will be observed that section 17 of the act of 1853 also provides for an examination into the affairs of a company formed under the general act, by the comptroller, and he may also invoke the action of the attorney-general, who may make application to this court for an order to show cause against the company, requiring it to show cause why its business should not be closed. If its insolvency shall appear, the court may decree a dissolution of the company.

It will be seen by these sections that a penalty is prescribed for every violation of the act, and the course is prescribed for a dissolution of the company in a case coming within its provisions.

It was urged, upon the argument by the learned counsel for the plaintiff, that sections 39 and 40 of the Revised

Statutes are applicable, and, therefore, that a *stockholder* can maintain this action.

This argument renders it necessary to consider section 11 of the act of 1853 (*4th vol. of Statutes at Large* [*Edmonds' ed.*], 219).

It is as follows : " all companies *formed under this act* shall be deemed and taken to be bodies corporate and politic, in fact and in name, and shall be subject to all the provisions of the Revised Statutes in relation to corporations, *so far as the* same are applicable, *except in regard to annual statements and other matters* herein otherwise specially provided for."

The words in the latter part of this section are very important and controlling upon the question now under consideration. The section is to be construed as though it read, companies formed under this act shall not be subject to the provisions of the Revised Statutes in regard to annual statements, and shall not be subject to the Revised Statutes in respect to other matters herein specially provided for.

The object of the exception was to prevent the application of the Revised Statutes to the annual statements, and to prevent their application to any " other matters " specially provided for in the act of 1853 (*Potter's Dwarris on Statutes*, 119 ; 1 *Washington C. C. R.*, 119, *opinion of* WASHINGTON, *J. ; Irving* agt. *U. States*, 15 *Peters*, 423).

Upon the construction of the eleventh section of the act of 1853 given, it must be concluded that the thirty-ninth and fortieth sections of the Revised Statutes are inapplicable.

The annual statements required of this defendant are regulated by the act of 1853.

So, too, that act " provides for every *violation* " of the act. The violation of the act being " specially provided for " by it, the exception found in section 11 expressly excludes the application of the Revised Statutes to the " violations " of the act of 1853.

The remedy for any supposed violation is to be pursued under the act of 1853. That is the exclusive remedy in

respect to annual statements, and in respect to every violation of the act.

. If the plaintiff is prepared to prove a violation of the act of 1853, then he can become "an informer" against the company, and cause a suit to be brought by the district attorney of the proper county for the recovery of the $500 of penalty, and receive one-half, as provided in section 18 of the act.

He is not in a situation to bring a suit in his own behalf, asking no personal relief — a suit not stated to be in behalf of all other stockholders who will come in and share its benefits, who are similarly situated (45 *Barb.*, 510) — a suit in which an injunction and receiver are asked for, because of supposed violations of the act of 1853 (1 *Edwards' Ch.*, 95).

The directors are not parties, and if they are guilty of frauds and illegal acts, injuriously affecting the rights of the plaintiff, they should be made parties (5 *Paige*, 607; 9 *Barb.*, 65; 45 *Barb.*, 510; 36 *Howard*, 20; 4 *Abbott* [*N. S.*], 107; 1 *Kernan*, 243; 55 *Barb.*, 667).

Courts of equity should not be called upon to usurp the province of directors, nor to govern them in the exercise, fairly and legitimately, of the discretion vested in them by the acts relating to the corporations in whose behalf they act.

Differences, as to the internal management, can be settled by stockholders at elections of directors, oftentimes more judiciously than by the interference of a court of equity (51 *Barb.*, 378).

The demurrer is sustained, with leave to the plaintiff to amend, upon payment of the costs thereof.