[New York Special Term, February 5, 1866. *Ingraham*, Justice.]

———————◆———————

## SWANSON *vs.* COOKE.

A party seeking to enforce, in our courts, a judgment rendered abroad, which, if paid there, would have been paid in a currency equal to gold, can not have the *premium on gold* added to the nominal amount of the debt.

THE plaintiff sought to enforce a judgment rendered by the Court of Chancery at Nassau in New Providence, directing the defendant to pay into the public treasury there certain moneys constituting a trust fund which he improperly withdrew and used for his own purposes. A judgment was rendered for the plaintiff, at a special term of the court, and on accounting ordered, with directions to pay the balance due into court. The referee took the account, and allowed the premium on gold, in addition. To this part of the report the defendant excepted, and this was a hearing upon the exceptions.

*Benedict, Burr & Benedict,* for the plaintiff. I. By the decree in the Court of Chancery set forth in the complaint, the defendant was directed to deposit in the public treasury at Nassau the sum of £1790 and to pay there the sum of £182.14 interest. The decree of this court directed that he perform that decree, and that a reference be had to ascertain what was "the amount in current funds of the sum decreed by that judgment." The question then for the referee was

Swanson v. Cooke.

this: "what is the amount, in current funds, of £1790 payable in Nassau?" There could be but one answer to that viz: The amount that it would cost here to put it there. That is just what the referee has reported, £1790 at $4.84 to the pound; $8663.60 at $1.46 the cost of sending $1 to Nassau, $12,648.85.

II. The decree ordered the payment of interest on the sum of £1790, at five per cent. The decree is dated November 10, 1861; giving four years and fifteen days interest to the date of the report. The interest on £1790 at five per cent for four years and fifteen days is £361.16s, at $4.84, equals $1751.11; $1751.11 at $1.46 premium equals $2556.62, which is the amount reported by the referee.

III. As to payment. The decree of the Court of Chancery ordered payment of the interest stated above, and also of the sum of £182.14.7 interest which had then accrued. The defendant's answer set up a payment of that sum. As there is no proof or allegation of any other payment it would seem to be clear on the face of it, that that is the payment referred to in the report. In fact there was no proof of any payment at all, but the plaintiff's counsel were willing to allow that sum as paid. It would be rather hard if that willingness of their's should enure to the advantage of the defendant by delaying the judgment.

IV. If the rate of gold had been taken on the 9th of October, instead of the 25th of November, it would have made no difference. Gold was $146 on that day, as on November 25. The decree does not fix any time when the rate shall be calculated. The defendant might with more reason ask to have had it fixed as of the date at which the judgment was to be entered; if that rate could be ascertained in advance; as it could not, the best way was to come nearest to it and fix it on the date of the report.

*Charles Edwards*, for the defendant. I. The amount in this case was not originally made payable in the United

States. It is not like a bill of exchange made payable here in sterling; in such a case, it might be a question, although the decisions are conflicting, whether a debtor must not make good the amount on the day the security became due, at the rate of exchange. But, here was a decree between foreigners, in a foreign country, requiring an amount to · be. paid in sterling in that foreign country. And the plaintiff seeks the defendant and asks that it be made good here. Now, in such a case, a plaintiff thus coming here for an amount which is payable elsewhere, and getting a decree which necessarily will cause a deposit of amount here in currency, must have such amount based on the par value of the pound; or, (which will be even a higher rate) have the calculation of amount based on the act of congress; especially as congress regulates coin and currency. Why should this party fare better as to outside amounts of sterling than our citizens? By act of congress, in rating government dues or payments by or to the treasury, "where it becomes necessary to compute the value of the pound sterling, it shall be deemed equal to four dollars and eighty-four cents." (*Act of July* 27, 1842. 5 *Stat. at Large, p.* 496.)

In cases where British seamen who have contracted for wages in sterling, and demanded to be paid off in our United States District Court, Judge Betts has approved of the above statute rate of $4.84 to the pound.(*a*.)

(*a*) The following decision of the Supreme Court, made at a general term held in the first district, in January, 1866, (Justices Geo. G. Barnard, Clerke and Ingragam present,) as to the value of the pound sterling, and the allowance of exchange, may be profitably read in this connection, and will be found useful in other cases.

### GUITEMAN *vs.* DAVIS.

*By the Court,* CLERKE, J. The rule as to damages on a bill of exchange payable in England in pounds sterling, is, we think, to estimate the pound at $4.44. To this is to be added the rate of exchange between this country and England at the time of trial, and the difference to be added, with interest. Where the bill is drawn in this state and returned unpaid, the damages are fixed by statute. The principle is, to allow the creditor what it would cost

Swanson *v.* Cooke.

If the defendant had contracted to make good an amount of sterling here there might be some reason in taking the fluctuating speculative rate, in the mere gold market, on some day or any day, of a pound sterling, But there is no law, nor, it is believed, any decision which justifies or requires such a basis—if basis it may be called which is merely transitory and of a loose gambling character; where a sterling debt originated in and was payable in a foreign land.

II. When an order in an equity suit directs a computation of principal and interest on a fixed amount, it is to be calculated from the day of the date of the order. And this is the more necessary if the fluctuating rate of gold is to be the medium through which an amount of currency is to be arrived at. Now in this case, the order is dated the 9th of

him to place the amount of the bill in the place of payment, or to allow him for re-exchange. For ordinary commercial purposes $4.44 is the par; for revenue purposes of the general government, $4.84. This is fixed by congress to avoid the daily fluctuations in the value; but it does not extend beyond payments to the treasury of the United States.

The rule above stated is adopted in England. (*Scott* v. *Brown*, 2 *B. and Ad.* 78. *Cash* v. *Kennion*, 11 *Vesey*, 314.) The same rule has been adopted in the courts of Pennsylvania and Massachusetts, and in the courts of the United States. The general principles may be found in *Story on Promissory Notes*, sections 396 to 400.

The rule is different if the bill is drawn abroad, and made payable here. In such a case, the holder is only entitled to receive the amount named in the bill, without exchange. (*Story on Confl. of Laws*, § 310. *Story on Prom. Notes*, § 398.) There are cases where it is said if the coin of the place of payment is reduced by the sovereign, after the bill has been drawn, the creditor is to be allowed the difference; but that does not apply to this case; as the law was not altered, in respect to the currency, between the date of the bill and the time of payment. In this case, the plaintiff is not entitled to any allowance for exchange.

The parties stipulated, at the trial, that the value of the pound sterling was fixed by the United States statute, and that the court should take such value by inspection of the statute. Although this value is fixed by the United States for revenue purposes only, yet, as the parties agreed that the value should be taken as the par value of the pound sterling, they can not now object that it has been estimated at $4.84, instead of $4.44.

The judgment should be affirmed.

October, 1865 ; whereas the referee makes his calculation as of the 25th of November.

III. Nor does the report show how much was allowed for payments, "allowing for all payments ;" nor at what rate, nor from what time, nor whether any interest was credited thereon.

IV. The report should have had a schedule annexed, clearly showing the amount of sterling, on which its result is based ; (there is no mention whatever in the report, nor even in the order, of such amount ;) and also the rate ; as well as showing from what time interest is calculated, as well as the rate at which the interest is calculated. No doubt it was made at seven per cent, which, if it so appeared, would, of itself, be exceptionable, as this British matter could only bear the British rate of interest, namely five per cent. In all the above particulars the report is deficient.

According to the present calculation, the amount of principal is . . . . . . . . . . . . . . . . $12,648 85
Whereas at the United States statute rate it would be only . . . . . . . . . . . . .   8,666 36

Difference, . . . . . . . . .. . . . . . . .$2,982 49

There is the same rate of difference in the interest.

INGRAHAM, J. The plaintiff, when she comes into this court to enforce the payment of moneys due her, must seek such redress according to our laws. She can not, because the debt, if paid abroad, would have been paid in a currency equal to gold, ask the courts here to add to the nominal amount a sum sufficient to enable her to take it back to the place where it was payable, and replace it there in gold. If it were an ordinary debt, payable in dollars, the parties, on resorting to our courts, must fare as citizens suing for debts due here would fare. In such a case they would only recover the nominal amount of dollars with interest.

So if the debt is for so many pounds sterling, the recovery,

can only be for that sum converted into dollars, at the rate which the pound sterling bears to a dollar, without any regard to the rate of exchange between the two countries, owing to the want of a specie currency here. The defendant concedes that amount to be at the rate of $4.84 for a pound sterling. The parties both agree upon that rate as the nominal value of a pound sterling. Although I have some doubt on that point, I shall take that rate as the proper one; and as they both agree as to what the sum would be at that rate, there is no need of sending the case back to the referee. The allowance of a premium on the amount was improper.

The plaintiff may take judgment for $8863.60 for principal, and $1751.11 for interest, directing the payment of the same into court, to abide the order of the court, with costs.

[NEW YORK SPECIAL TERM, March 5, 1866. *Ingraham*, Justice.]