BLODGETT (ADAMS v.). See Case No. 46.

BLODGETT (UNITED STATES v.). See Case No. 14,611.

---

## Case No. 1,556.

### The BLOHM.

[1 Ben. 228.][1]

District Court, S. D. New York. June Term, 1867.

SEAMAN'S WAGES—PRIORITIES—LIEN — HAMBURG CODE—EXTRA PAY ON SALE OF VESSEL ABROAD —MORTGAGOR—THE GOLD QUESTION.

1. Seamen shipped in Hamburg for a voyage to New York and back. In New York the vessel was sold by a decree of the court of admiralty for advances, and the purchaser discharged the seamen, who, thereupon, petitioned to have their wages, with two months' extra pay, paid first out of the fund: *Held*, that a sailor who was made second mate was entitled

to a second mate's wages from the time of his appointment.

[See Knee v. American S. S. Co., Case No. 7,877.]

2. That a sailor shipped in New York, who rendered services on board in port only, was entitled to a lien for his wages.

[Cited in The Atlantic, 53 Fed. 609.]

[See Levering v. Bank of Columbia, Case No. 8,286; The Artisan, Id. 568.]

3. That the Hamburg law was part of the contract of these seamen, and that, by that code, when a vessel is prevented by higher power from completing the voyage, and the crew are discharged, they are entitled to a free passage home, or two months' extra pay.

[See The Alonzo, Case No. 258.]

4. That the sale of this vessel by decree of court was a "preventing by higher power," and that, as no free passage to Hamburg had been provided, the seamen were entitled to the two months' extra pay, and had a lien on the proceeds for it.

5. That a mate who had loaned money to the master and taken from him an agreement, in place of interest, to divide all profit and loss, as if he were part owner, was only a mortgagee, and was entitled to recover his wages as mate.

6. That an increase of wages by the master in New York did not give the sailors a lien for such increase prior to that of creditors for advances to the vessel.

7. That the act of March 3, 1843 [5 Stat. 607], fixing the value of the "mark," does not apply to its value for commercial purposes, and that such value is a matter of evidence.

8. That the amount decreed to the seamen must be the amount of their wages, in Hamburg money, reduced into coined dollars of the United States, without adding anything by reason of the premium on gold.

[Cited in The Mary J. Vaughan, Case No. 9,217; Baker v. Ward, Id. 785.]

[See The Cabot, Case No. 2,277.]

[9. Cited in Gove v. Judson, 19 Fed. 524, to the point that a seaman discharged in a foreign port may bring suit for the three months' wages allowed by Rev. St. § 4582, if the wages are not paid to the consul as required by that section.]

In admiralty. The brig Blohm, a Hamburg vessel, shipped a crew in Hamburg for a voyage to New York and back, at various rates of wages, payable in marks courant. After the vessel had arrived in New York, the second mate left her, and one of the crew, named Struck, was appointed second mate in his place, and another sailor, named Ternan, was shipped to supply Struck's place. While the vessel lay in New York, the master, as it appeared, agreed to raise the wages of the rest of the crew above the rate specified in the articles. After this agreement was made, the vessel was libelled in the court of admiralty for advances made to her, and was sold under a decree of the court, whereupon the crew applied, by petition, to the court for their wages, and for two months' extra wages, under the Hamburg Code. The proceeds of the vessel not being sufficient to pay the sailors' claim and also the decree for the advances, the amount of the sailors' claim was contested by the libellants, in whose favor that decree was made.

The libellants contested the claim of the sailors on the following grounds: 1. They claimed that, even if the master did advance the men's wages, their own claim should be paid in preference to such advance. 2. They claimed that Ternan having only rendered services in port, had no lien on the vessel or her proceeds. 3. They claimed that the two months' extra pay was not a lien on the vessel. 4. They claimed that the mate, Vogelgesang, was really a part owner of the vessel, and, therefore, could not claim a lien on her for his wages. This claim was based on the fact that in August, 1865, while the bark was in Hamburg, the mate loaned Tiedemann, who was master and owner of her, seven thousand thalers, and, on the 14th August, 1865, they entered into a written agreement, which recited that Vogelgesang had loaned Tiedemann that amount, for the purchase of the brig Blohm, and provided that, "for increased security of this capital, Tiedemann mortgages to Vogelgesang the vessel, and gives him the first mortgage for this money, and that, instead of paying interest, the parties agree that they shall divide all profit and loss, the same as if he was a part owner. It was also agreed, that in case Vogelgesang should die, his share of the profit or loss should be for the benefit of another party. And, by a subsequent article, dated in September, the parties agreed that, in case of Vogelgesang's death, the money should be paid to this third party with five per cent. interest, and the vessel should be mortgaged to him till it was paid. 5. The libellants also claimed that the amounts to be paid the seamen should be calculated by reducing the marks courant to dollars of the coin of the United States, and giving them a decree for that amount, while the seamen claimed that the amount of the premium on gold in New York at the time should be added, in calculating the amounts decreed to them.

J. K. Hill, for petitioners.

C. M. Da Costa, for libellants.

BLATCHFORD, District Judge. The contract of August 14th, 1865, with the supplemental contract of September 11th, 1865, between Vogelgesang, the mate, and Tiedemann, the master of the vessel, was merely a mortgage of the vessel to Vogelgesang as a creditor of Tiedemann, and did not constitute Vogelgesang a part owner of the vessel. He is, therefore, entitled to his wages, as mate, of 84 marks courant per month.

As to Ternan, the man shipped at New York, he was shipped to supply the place of Struck, who was promoted to be second mate, in place of a second mate whom the master had discharged. No objection is made to the promotion of Struck; and the employment of Ternan, under the circumstances, was proper. He is, therefore, entitled to his wages of 60 marks courant per month.

Struck is entitled to his wages as seaman, at 42 marks courant per month, to February

5th, 1867, and, from that time, to wages, as second mate, at 60 marks courant per month.

The alleged increase of the wages of Adams, Ahrent, and Struve, made February 5th, 1867, cannot be admitted. They shipped for the round voyage back to Hamburg, and it does not sufficiently appear that the agreement made by the master to raise their wages from the 5th of February, 1867, was a voluntary act on his part by which the vessel ought to be bound, especially as against creditors advancing money on the strength of a lien on the vessel. Accordingly, Adams, Ahrent, and Struve are entitled to wages for the whole time since they shipped at the rates named in the shipping articles and no more, namely: Adams, 27 marks courant per month; Ahrent, 21 marks courant per month; and Struve, 12 marks courant per month.

The Hamburg law formed part of the contract with these seamen, and, according to that, I think that each of the crew is entitled to either a free passage to Hamburg from New York or to two months' extra wages. It is urged that this cannot be enforced as wages, and is not a lien, but is merely a penalty enforceable against the master and owners personally. It is true, that in article 24 of the Hamburg Code this two months' wages is called forfeiture money, but in article 25 it is expressly provided that if a vessel is entirely prevented by higher power from the continuation of her voyage, the crew have to look for their passage home or money in lieu, according to article 24, entirely to the vessel or the proceeds of the same, and not to the master or owners. In this case, the vessel is a Hamburg vessel and has been prevented, by the vis major of a sale under a decree of this court, from continuing her voyage, and the crew have been discharged from her by the purchaser under the sale. The choice as to whether the crew shall have a free passage home or this "distance money," as it is called in article 25, is given by that article to the master. As he appears to have been derelict to all his proper duties, and no free passage home has been provided for the seamen, each of them is entitled to two months' extra wages, at the rate of his ordinary wages, to be paid out of the proceeds in court.

The only remaining question is, as to how the computation is to be made of the amounts due to the seamen. It is shown by the evidence that 125 marks courant are equal to 100 marks banco of Hamburg. The act of March 3d, 1843, § 1 (5 Stat. 625), fixes the value of the mark banco of Hamburg at thirty-five cents, in all computations of its value at the custom houses of the United States. This act does not apply to its value for commercial purposes; and, by the act of February 21st, 1837 (11 Stat. 163), all former acts declaring foreign gold or silver coins a tender in payment of debts are repealed. The question, therefore, is one of evidence, to be taken before a commissioner, as to the commercial value of the mark courant of Hamburg in the coined money of the United States. When that value is ascertained, a further question arises. The claimants contend that the amount due the seamen in dollars, computed at that value, must be paid in United States currency, or legal tender notes; while the petitioners claim that they are entitled to be paid the amount in gold, or, if paid in United States currency, or legal tender notes, to be paid so much as will purchase an amount in gold equal to the amount in dollars found to be due to them. The ground of this claim of the petitioners is, that the contract of the seamen was made in Hamburg, for service on board of a Hamburg vessel, and that their wages are made payable in Hamburg currency. It is difficult, perhaps, to reconcile some of the decisions which have been made on this subject. The case of Councer v. The Griffin [Case No. 3,279], decided by Judge Hall in the district court for the northern district of New York, and affirmed by the circuit court on appeal, and the case of The Rochambeau [Id. 11,973], would seem to sustain the views of the petitioners. But the practice of this court has been to the contrary, even in cases of foreign seamen shipped abroad on foreign vessels under a contract in which the rate of wages was expressed in a foreign currency. The Isis [Id. 7,106], before Judge Betts, Nov., 1864; The Tweed [Id. 14,278], before Judge Benedict, Feb., 1866. And I am satisfied that the weight of authority, both on principle and by precedent, is in favor of the view which has prevailed in this court. Metropolitan Bank v. Van Dyck, 27 N. Y. 400; Wilson v. Morgan, 30 How. Pr. 386; Swanson v. Cooke, 45 Barb. 574; Kimpton v. Bronson, Id. 618. When the amounts due to the petitioners in coined money of the United States are ascertained, according to the evidence which shall be given as to the commercial value of the mark courant of Hamburg in the coined money of the United States, they will be entitled to a decree for the payment of those amounts in United States currency, or legal tender notes, dollar for dollar, without any allowance for any premium on such coined money or any depreciation in the value of such currency or notes.

If the parties do not agree on the amounts due to the petitioners on the principles thus declared, there must be a reference to a commissioner.