1 [Reported by Hon. William B. Woods, Circuit Judge. and here reprinted by permission.]

---

## Case No. 11,685.

### REISER v. PARKER.

[1 Lowell, 262.] [1]

Circuit Court, D. Massachusetts. May Term, 1868.

JUDGMENT—FOREIGN MONEY—MEASURE OF DAMAGES—RATE OF EXCHANGE.

1. In an action here to recover a certain number of pounds sterling payable in London. the measure of damages is the intrinsic value of the pounds measured in our dollars, which the evidence showed to be very nearly $4.86 to the pound.

2. Whether the rate of exchange can be regarded, quære.

3. The cases on the subject of allowing the rate of exchange considered.

4. The constitutionality of the legal tender acts was not considered, because that point would be more properly raised when the judgment was to be paid or collected.

Assumpsit by [Benedict Reiser] a resident of London, England [against F. E. Parker, administrator], to recover a balance of account of £849 6s. for goods sold. The case was submitted to the court, without a jury, and most of the facts were agreed in writing. Upon the rate of exchange at different times evidence was taken. The date of the writ, 15 September, 1864, was agreed to be the day of the breach by non-payment. At that time the pound was worth in United States treasury notes about eleven dollars, and at the time of the hearing it was worth about six dollars and sixty-four cents. According to the course of dealing between the plaintiff and the defendant's intestate, who was a resident of Boston, the money would have been remitted to London if he had lived. The question for the court was the amount for which judgment should be entered.

R. D. Smith, for plaintiff.

R. T. Paine, Jr., for defendant.

LOWELL. District Judge. The decided cases and the principles of law and of the theory and practice of exchange which bear upon the case, have been carefully and ably presented to us in the arguments of counsel, to which we must admit our great obligation. The plaintiff contends that we must treat the pound sterling as merchandise and assess its value, at the time of the breach, in the most usual currency of this country, according to the judgment in Essex Co. v. Pacific Mills, 14 Allen, 389; or, if not, that we must assess his damages according to the rate of exchange reckoned in currency. The defendant insists that we must give the real par of exchange in all cases. He contends, besides, that the legal tender acts are unconstitutional, and so the assessment must be in gold.

The question whether in an action for a

---

1 [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

debt payable in another state or country. not being a bill of exchange, the damages are to be so assessed as to give the rate of exchange prevailing in the country where the suit is brought, has been decided differently by different courts. The cases cited, or which we have found in favor of the allowance, are Smith v. Shaw [Case No. 13,107]; Cropper v. Nelson [Id. 3,417]; Lee v. Wilcocks, 5 Serg. & R. 48; Scott v. Bevan, 2 Barn. & Adol. 78; Delegal v. Naylor, 7 Bing. 460. Mr. Justice Story and Chancellor Kent have expressed their opinions in favor of this rule: Story, Confl. Laws, §§ 308–312; Grant v. Healey [Case No. 5,696]; 3 Kent, Comm. (5th Ed.) 117, note a; and see Cash v. Kennion, 11 Ves. 314.

On the other hand, it has been held that the par of exchange ought to be considered, without regard to the cost of remittance or the balance of trade, in the following cases: Martin v. Franklin, 4 Johns. 124; Scofield v. Day, 20 Johns. 102; Adams v. Cordis, 8 Pick. 260; Alcock v. Hopkins. 6 Cush. 484; Burgess v. Alliance Ins. Co., 10 Allen, 228; Weed v. Miller [Case No. 17,346]; Cockerell v. Barber, 16 Ves. 461.

The argument in favor of allowing the rate of exchange is that the plaintiff is entitled to have his money at the place agreed on. Against it, the reply is that the court can award only the debt due, and cannot inquire what the plaintiff intends to do with his money after he receives it, and cannot fix by its decree the day when he shall receive it. We do not make a careful examination of the arguments, or of the authorities, because in the present case the evidence is that exchange reckoned in gold was at par on the day to which most of the evidence was addressed, that is the day of the date of the writ, meaning by par the actual value of the pound at our mint, or $4.86; and the only witness who gives the value at the time of the hearing, gives a variation of less than two cents in a pound from the real par. And it is to be observed that the courts which adhere most firmly to the rule of the par of exchange, have modified their views to meet the objections of Judge Story and Chancellor Kent, and now award the actual par. or $4.86, and not the mere nominal and obsolete par of $4.44, which they originally adopted (Bush v. Baldrey, 11 Allen, 369; Swanson v. Cooke, 45 Barb. 574); and thus agree to the correctness of the rule laid down in section 309 of the Conflict of Laws, that they are to "allow that sum in the currency of the country where the suit is brought which should approximate most nearly to the amount to which the party is entitled in the country where the debt is payable, calculated by the real par and not the nominal par of exchange," so that the only dispute now remaining is whether the fluctuations arising from the course of trade, which between England and this country, when both countries are trading on a gold basis, are comparatively insignificant, shall be regarded.

But in this case, as we have said, the evidence is that exchange reckoned in gold was at 9½ to 9¾ above the nominal par, which is equivalent to the real par of $4.86, so that the question for us is whether the plaintiff is to be allowed $4.86, or about $11.00 for each pound sterling due him. that is whether his damages are to be reckoned in gold or in paper. If not assessable at the high rate which prevailed at the date of the writ. the plaintiff would still contend for such an assessment as will now procure him £849 6s., say at from $6.67 to $7.00 to the pound.

The difficulty in the case arises out of the fact that we have two currencies, one of which unfortunately does not possess the steadiness of value which is the first requisite for the standard of other values. In this case, for example, if the pound is reckoned in paper at the date of the breach, the plaintiff will now obtain about thirteen hundred pounds in gold for the eight hundred and fifty pounds due him; while, on the other hand, if his debt shall be reckoned in gold and paid in paper at its present value, he will receive only about £600 for the same debt. Exact justice, if we could administer it, would seem to be met by ordering him to receive an approved bill of exchange for £849 6s. and interest, or such a sum of money as on the day of payment, if we could foretell it, would buy such a bill. As we can neither oblige the defendant to give nor the plaintiff to receive a bill of exchange, we must reckon his damages in our money.

And it seems to us that the only safe rule is to compare the pound and the dollar in a case of this kind upon a gold basis. This is the rule adopted in Hussey v. Farlow, 9 Allen, 263; Bush v. Baldrey, 11 Allen, 369; Swanson v. Cooke, 45 Barb. 574; The Patrick Henry [Case No. 10,805] (Dist. Ct. S. Dist. N. Y., July, 1867; Shipman, J.). The pound sterling has always been treated as money here, though foreign money, as a standard of value and not as a commodity. Up to 1857 it was a legal tender in the payment of debts, and its value is still fixed by law for estimates at the custom house and for payments by and to the treasury. Statute 27th July, 1842 (5 Stat. 496). Its value has a known and precise relation to that of our coin, so much so as to have become a question for the court rather than the jury, but it has none to our paper, because the latter is constantly fluctuating. We think it would be unsafe, and on the whole likely to work injustice, if this value were to be considered an open question in each case. The evidence is that the persons who deal in remittances almost always make their quotations in gold. They have found that to be the only safe and prudent course, and we find it so.

This is not a contract to deliver foreign coin here at a certain day, and there is no presumption of law or fact that a creditor in England having an open account with a person here for goods sold, would, on the day it became due by demand of payment, remit to himself in England if the debtor failed to do so. His damages are the amount of his debt, and not what the debtor might then have been obliged to pay in a depreciated currency to liquidate it. We know that, in fact, the pound has not changed its value, but has only seemed to change, and the practical difficulty for us is to follow the fluctuations. If we give judgment to-day for a certain sum, and it is paid in paper, we cannot tell that the amount may not by the time of payment be much more or much less than the equivalent of the plaintiff's pounds.

The validity of what is called the legal tender law has been argued by only one of the parties to this cause, and in the view which we have taken is not involved in its decision. If the plaintiff desires to raise that question, he can do so when payment is made or offered upon the judgment, by refusing a tender of notes.

Judgment accordingly.

NOTE. This decision was given before the supreme court had established the practice of entering judgment in gold or in currency, according to the rights of the parties in each case.