### W. & J. Rice *vs.* The Ontario Steamboat Company.

It is the owner or charterer of a ship or vessel, only, who is exempted from liability for a loss occasioned by fire without fault, by the act of congress of March 3, 1861, "to limit the liability of ship owners," &c.

A steamboat company, receiving goods at Oswego, to be transported to Montreal, and carrying the same to Ogdensburgh and there transferring them to a boat owned by other parties, to be carried the remainder of the distance, under a general arrangement between them and the company, to forward freight for the company, is not the owner or charterer of such boat, within the letter or spirit of the act of congress, so as to be entitled to claim the exemption provided therein for losses occasioned by accidental fire.

The true measure of damages for the non-delivery of goods entrusted to a carrier, without fraud or fault of the master, is the current value of the goods at the place of destination, less the charges for freight at the time when the goods ought to have been delivered there.

In an action against a carrier, to recover the value of goods delivered to him in this State to be transported to Montreal, and which are destroyed by fire, while on the passage, it is error to allow for damages the amount that the property was worth in Montreal on the day it was destroyed, in American money, or legal tender notes.

In such a case, the amount of damages is governed by the general rule that debts due in one country and sued for in another, are to be computed where the action is brought, in the currency of the country where the debt was payable, and without adding or subtracting on account of any depreciation there may be in the currency of either country.

APPEAL from a judgment rendered upon a trial before the court, at the Oswego circuit, a jury having been waived.

On the 22d and 25th of October, 1864, the plaintiffs shipped on board of the defendant's steamboats at Oswego, eight hundred ninety-eight barrels of apples, eighteen casks of cider, and two barrels of dried apples, to be delivered by the defendant, a common carrier, at Montreal, at the price of thirty-eight cents per barrel. The defendant's steamboats on which the apples and cider were taken, at Oswego, plied between that place and Ogdensburg, and ran in connection with two British boats, which conveyed property and passengers between Ogdensburgh and Montreal, and which were neither owned or chartered by the

defendant; at least, such was the case with the Alexandria; and the Alexandria was exclusively employed on the River St. Lawrence and Beauharnois canal connected therewith.

As early as the 25th or 26th of October, the apples and cider of the plaintiffs were transferred at Ogdensburgh, by the defendant, from its steamboats, to the Alexandria, to be taken to Montreal, and that vessel started on the voyage. On the 26th of October, by accident and without fault, she took fire and was consumed with her cargo, while in the Beauharnois canal, at a distance of about thirty-five miles from Montreal, and the property of the plaintiffs was destroyed.

It appeared that on the 26th of October, 1864, such apples were worth in Montreal from $2 to $2.50 per barrel in Canadian currency, or gold, and from $4 to $4.50 in United States currency; and that at the time of the trial $1 in Canadian currency, or gold, was worth $1.38 or $1.39 in American currency.

The court found in favor of the plaintiffs, and allowed for damages the amount that the property was worth in Montreal on the 26th day of October, 1864, in American money, or legal tender notes, being for the apples at the rate of $3.25 per barrel, after deducting the freight. The whole amount of damages being $3060.45, upon which judgment was entered, with costs, and the defendant appealed.

*C. B. Sedgwick*, for the appellant.

*J. C. Churchill*, for the respondents.

FOSTER, J. The only questions raised in the case are, whether under the act of congress entitled "an act to limit the liability of ship owners and for other purposes," passed

March 3, 1861, (9 *Stat. at Large*, 635,) the defendant is liable at all; and if so, whether the plaintiff was entitled to recover any greater amount in dollars here, than he could have recovered if the suit had been brought in Canada. And if he was, whether he was entitled to the difference between gold and United States currency at the time of the loss, or *that* difference at the time of the trial.

It cannot be necessary even to copy the section of the act upon which the defendant relies for exemption from liability. It is sufficient to say that it is the "owner" of the ship or vessel who is exempted from liability for loss occasioned by fire without fault, and by the express terms of the act, even one who charters the vessel is not included in its exemption, unless he mans, victuals and navigates it at his own expense, or procures this to be done for him. The defendant was neither the owner or charterer of the Alexandria in any way.

It is not claimed that the defendant shared in the expenses or the profits, incurred or earned by the Alexandria, and had only a business arrangement with her owners, to forward freight for the defendant as a carrier. The defendant was not the owner, within the letter or spirit of the act, and there is no principle applicable to this case which will allow us to give a strained construction of the act, in its favor.

Besides, the Alexandria was used in river navigation, and therefore, according to the 7th section of the act, the defendant would not be entitled to the exemption, even if it were her owner.

The only serious question is, whether the rule of damages adopted by the court below was erroneous, and if it was, what is the true rule in such cases?

The true measure of damages for the non-delivery of goods entrusted to a carrier, without fraud or fault of the master, is the current value of the goods at the place of

Rice *v.* Ontario Steamboat Company.

destination (less the charges for freight) at the time when the goods ought to have been delivered there. (*The Gold Hunter,* 1 *Bl. & How.* 300. *Watkinson* v. *Laughton,* 8 *John.* 213. 2 *Wait's Law and Prac.* 668, *and cases there cited.*) Though if the carrier should convert the goods and carry them to a port where they were of much greater value than at the place of consignment, there is no doubt that the owner would be entitled to recover the value at the place where taken by the master.

In the case of bills of exchange drawn upon a foreign country, and protested for non-acceptance or non-payment, the holder, on their return, may recover of the drawer such amount as will be an actual equivalent for the sum drawn for, in the country in which the bill was payable. But this is an exception to the general rule, that where money is payable in one country, and a suit therefor is brought in another, the plaintiff must recover the same number of dollars, pounds or francs, as the case may be, as the indebtedness called for at the place where it was payable; and without regard to whether the currency in either country is depreciated below that of the other. And this *general rule* obtains in cases where the equitable claim to recover the difference of exchange is quite as strong as in the case of foreign bills. As where " H." of Boston bought goods of A., living in Breslieu in England, to be paid for by a bill to be drawn by A. upon C. & Co. of London, at four months, and which C. & Co. agreed to accept, and A. drew the bill, which was accepted and negotiated by A. to a *bona fide* holder and was not paid by C. & Co., but was paid and taken up by A., it was held that in a suit by him against H. in this country for the goods so sold, he could recover only the original price of the goods, without exchange. (*Alcock* v. *Hopkins,* 6 *Cushing,* 484.) When a person in New York purchases goods in England and is sued here, the creditor can recover the amount at the par of exchange only, and is not entitled to any allow-

ance for the rate of exchange, or for the price of bills on England. (*Martin* v. *Franklin*, 4 *John.* 124.) In an action brought here upon a contract for the passage of the defendant and his family from Boston to Canton, payable at Canton, and which was demanded there and not paid, the plaintiff could not recover the rate of exchange, although there were no tribunals in China in which he could sue. (*Lodge* v. *Spooner*, 8 *Gray*, 166.)

When a foreign creditor sues for his debt in this State (Massachusetts) he will recover (except in the case of a bill of exchange) at the par of exchange. (*Adams* v. *Cardis*, 8 *Pick.* 260.) And in an action brought in our courts, upon a judgment rendered abroad, which, if paid there, would have been paid in a currency equal to gold; the premium on gold cannot be added to the nominal amount of the debt. (*Swanson* v. *Cooke*, 45 *Barb.* 574.)

The fact that the currency of the United States is depreciated by the passage of the legal tender act, cannot affect the principle applicable to this case; and the difference in value between gold and United States currency is in no proper sense a difference in exchange. That act is not only held by the highest court of this State to be constitutional, but it is decided that obligations payable in gold may be discharged by the tender and payment of legal tender notes. (*Metropolitan Bank* v. *Van Dyck*, 27 *N. Y. Rep.* 400. *Kimpton* v. *Bronson*, 45 *Barb.* 618.) The rule is the same in Massachusetts. (*Wood* v. *Bullens*, 6 *Allen*, 516.) And in Iowa, where a loan of American gold was made, and a note taken therefor, payable in United States gold, it was held that the debt could be discharged by the payment of the sum due, in legal tender notes. (*Wamibold* v. *Schlicting*, 16 *Iowa R.* 243.)

A charter party made in a foreign country, providing for the discharge of the cargo in the United States, and requiring the freight to be paid in silver or gold dollars, can be satisfied by payment in legal tender United States

Rice *v.* Ontario Steamboat Company.

notes; and the tender of the freight in such notes discharges the debt. (*Wilson* v. *Mayer*, 30 *How. Pr.* 386.)

By the terms of the shipment, in this case, the freight was payable at Montreal, and if the Alexandria had safely arrived there and had delivered the apples and cider as consigned, the defendant would have been entitled to payment of the freight in Canadian currency or gold. But suppose, instead of requiring payment of the freight at the time of delivery, the apples had been delivered and the freight not paid, and the defendant had sued the plaintiffs here to recover it, could the recovery have exceeded the rate of thirty-eight cents per barrel, which was the contract price? True, the freight would have been due and payable at Montreal, and payable there in gold, but it is manifest, I think, that by resorting to the courts of this State for the recovery of the debt, the recovery would be limited here to the number of dollars which were payable in Montreal, without exchange and without allowance for depreciation of our currency.

It is impossible, in my opinion, to uphold the decision of the learned judge, without introducing another exception to the general rule that debts due in one country and sued for in another, are to be computed where the action is brought, in the currency of the country where the debt was payable, and without adding or subtracting on account of any depreciation there may be in the currency of either country.

It must be admitted that this rule imposes quite a loss upon the plaintiffs, but not more than would be the case where a promissory note had been given in Canada, and payable there for a like amount, and the holder was compelled to resort to our courts for the collection of it. In that case the maker would be a voluntary promissor to pay the debt in a certain currency, and yet it is perfectly clear that all our courts could do would be to allow judgment to be rendered against him for that amount only. In this

case, though there was no direct promise to be liable to account for the goods, the law imposed upon the defend-ant' that obligation, though without actual fault. And although there is no reason for finding fault with the rule which compels the carrier in such cases to bear the loss, I know of no reason why we should introduce a new rule of damages as against the defendant, when, as it clearly appears, it is not chargeable with any wrong, and will be much the greatest sufferer under the rule which we adopt.

The judgment should be reversed and a new trial granted, with costs to abide the event; unless the plaintiffs elect to reduce the amount of damages to $2033.79, in which case no costs of appeal are to be allowed to either party.

MORGAN, J., concurred.

MULLIN, J., dissented.

Judgment accordingly.

[ONONDAGA GENERAL TERM, June 30, 1868. *Foster, Mullin* and *Morgan,* Justices.]