## Case No. 6,514.

### HINDMAN v. SHAW.

[2 Pet. Adm. 264.] [1]

District Court, D. Pennsylvania. 1806.

SEAMEN'S WAGES—REFUSAL TO PROCEED ON VOYAGE.

1. A ship earned freight at one port of delivery; but was unfit to proceed from a port at which she touched in the progress of her voyage. The seaman refused to proceed in a vessel provided for the further transportation of the cargo, and claimed wages and an additional allowance. The court refused him wages or additional allowance, for the latter part of the voyage. Spanish laws alone fix the allowance, which in general is discretionary.

[Cited in The Saratoga, Case No. 12,355; Wells v. Meldrum, Id. 17,402; Thompson v. The Oakland. Id. 13,971; Nevitt v. Clark. Id. 10,138; Gurney v. Crockett, Id. 5,874.]

[Cited in Van Beuren v. Wilson, 9 Cow. 160.]

2. Distinction between a vessel sent out not sea-worthy, and one becoming so by a casualty.

[Cited in Hoffman v. Yarrington. Case No. 6,-580; The Wenonah, Id. 17, 412; The Frank and Willie, 45 Fed. 490.]

[This was a libel for wages, by Hindman against Shaw, master of the brig Diligence.]

A ship had been at a port of delivery; and so far earned her freight. She sailed from Philadelphia on a circuitous voyage, and to return to that port. The seaman had shipped for the voyage. At a port, subsequent to her first delivering port, in Europe, she was found not sea-worthy. The cargo was re-shipped for its destination, in another vessel, freighted for the purpose; the seaman was offered a continuance of his contract, in the freighted vessel. He refused; and now claimed his wages to the time of the ship's incapacity to proceed; and two months additional pay, for his expenses and loss of time, in returning home. The extension of his claim beyond the wages due on delivery of the first cargo, was the chief point in dispute.

BY THE COURT. This seaman comes before me with a barren case. I see no equity in his demand for the additional pay, and as little justice in his claim, after the delivery of the former cargo. The freight was earned to that time, and his wages attached to that fund. I do not feel myself warranted in allowing more than the wages to the first port, and for half the time of stay there. His refusal to continue his contract, though in another ship with the same cargo, is tantamount to desertion; and though there is some difficulty in bringing his case to that point, owing to the change of ship and strict construction of our laws; yet I think he has not a well-founded claim upon the freight, arising from the transhipped cargo, as he did not, though he had it in his option, assist in earning it. He cannot be entitled to the allowance, usual in common cases of voyages intermitted, by being broken up for the inter-

---

[1] [Reported by Richard Peters, Jr., Esq.]

est, profit, or convenience of the owner. In such cases, I always exercise a discretion according to circumstances, and allow from one to three months pay, in addition. On a careful enquiry, repeatedly made, I do not find any precedents, exactly ascertaining the additional allowance. Where I have thought them entitled, I have given to seamen one month's pay, in voyages broken up in the West Indies, or distant ports of the United States; two months' pay, if in Europe; and three months, if in India; and in one case, four month's pay, under peculiar circumstances.[2] In all cases of voyages broken up, I have allowed the merchant an alternative. If the seamen were accommodated with passages and supplies to bring them home, equivalent to the allowance, I have suffered this to be substituted for the additional wages. If berths, on the terms of the original contract, were procured, and means of supply of necessaries, for the voyage of return, were furnished, I have refused additional pay. The only laws in which I have found any rate of allowance fixed, are those of Spain. These seem to fix the rates, according to the place of breaking up the voyage, at certain designated proportions. But in general, it is a matter of discretion, and the true point of justice not always easy to be found. In some cases there is a distinction (as there is in claims for insurance) between a voyage broken up by the default of the owner, in sending a vessel to sea, found to have been unworthy in the outset, and one rendered so by unavoidable casualty. In the former case, the merchant is delinquent, and subjects himself to all consequences: in the latter instance, he is unfortunate, and entitled to equitable consideration. It is somewhat similar to wreck, where freight, if goods saved, is due pro rata itineris, or entire, if sent to the place of destination. Seamen assisting in conducting the cargo to its intended port, participate in all the advantages; because they ensure to the merchant the acquisition of his fund, out of which wages are paid. But it is otherwise with those who will not afford their assistance, when both their interest and their duty require it. Nor do I think it material, where the seaman may, if he chooses, continue and fulfil his contract, when or how the vessel became unfit for the further performance of her voyage.

NOTE. Where seamen are sent home at the expense of the owner or master, they must be allowed for their time at the contract rate of wages. A change of the voyage, or voluntary deviation, is a breach of contract, and is governed by other principles than those which prevail when voyages are broken up from necessity or misfortune. The seaman must have his option to go the new voyage, on the terms of the old contract; if he makes his election to return home, he must be furnished with the means, and reasonable pay, according to the rate agreed. If the change or deviation is with intent to procure hands at less wages, or to afford an excuse for discharge of the mariners without lawful cause, wages for the voyage originally contracted for, are recoverable, and have been decreed. These are not singular cases: they have too often occurred. They fall within the principle, that full wages are due where the discharge is not for lawful cause. Anomalous instances, very atrocious, have been in proof: one, of a ship going out of her way, to put on shore two seamen, alleged to have been mutinous, but no testimony of this was exhibited; they were landed on a desert island in the East Indies, to which a savage race of sea rovers occasionally resorted. These victims were stripped of all their clothes by the savages, and experienced every extreme of distress and disease, in a tropical climate, to which one of them fell a sacrifice. The survivor returned, and I adjudged to him wages for the voyage; and left other circumstances, to be investigated in another tribunal.

---

[2] The passage to India being accounted equal to two and a half passages from the United States to Europe, I have deemed myself warranted, when uncommon circumstances urged the measure, to allow four months and upwards. I should not hesitate to allow more, in an extraordinary case.

