## Case No. 1,104.

### BATES v. SEABURY et al.

#### [1 Spr. 433;[1] 21 Law Rep. 666.]

#### District Court, D. Massachusetts. Oct. Term, 1858.

SEAMEN—WRONGFUL DISCHARGE — DURESS—DAMAGES—ADMIRALTY PRACTICE—PROCTOR'S POWER TO COMPROMISE.

1. Where a seaman is induced to assent to his discharge, upon payment of a nominal sum, from just apprehension of future ill treatment, arising from the misconduct of the master, such assent is given under a species of duress, and is no bar to a recovery of the amount actually due to him, at the time of his discharge.

[Cited in Gove v. Judson, 19 Fed. 524. See, also, Mayshew v. Terry, Case No. 9,361; Jenks v. Cox, Id. 7,277; The Ringleader, Id. 11,850.]

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]
2FED.CAS.—65

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

2. If, subsequently to such discharge, the seaman ships in another vessel, at an advanced lay, it is not a correct principle, in settling his claim against the first ship, to reckon full wages for the entire voyage of such ship, and to deduct therefrom his earnings in the second ship, during the time.

3. The amount due at the time of his discharge, from the first ship, is an absolute debt.

4. A seaman wrongfully discharged is entitled to an indemnity [for his loss of time and other damage subsequent to the discharge.]

5. In ascertaining such indemnity, subsequent expenses and earnings may be taken into the account.

6. A proctor in admiralty cannot release, or compromise, a debt due to his client, without special authority.

7. But he is authorized to receive payment. And an insufficient amount paid to a proctor, in settlement, is a discharge pro tanto.

8. Seamen, in the whaling service, discharged abroad, are entitled to the benefit of the statute giving three months' extra wages, [Act Aug. 18, 1856, § 26; 11 Stat. 62.]

[Cited in Frates v. Howland, Case No. 5,066; Gove v. Judson, 19 Fed. 524.]

9. A charge of 2½ per cent. commissions on sales of oil, was disallowed.

[Cited in Frates v. Howland, Case No. 5,066.]

10. So also were charges for fitting and discharging ship.

[Cited in Frates v. Howland, Case No. 5,066.]

11. Interest allowed from the filing of the libel.

[Cited in Frates v. Howland, Case No. 5,066.]

[In admiralty. Libel for seaman's wages by Bates against Seabury and others. Decree for libellant.]

The libellant was a boat-steerer of the ship Scotland, which sailed from New Bedford on the 20th of June, 1851, on a whaling voyage. After taking a considerable quantity of oil, he was, in the month of November, 1852, discharged, with his own consent, at Lahaina, in the Sandwich islands. The circumstances attending that discharge sufficiently appear in the opinion of the court. Some weeks after that discharge, the libellant shipped in the whale ship Orizimbo, at an advanced lay, and returned in her to New Bedford, in the spring of 1854. He then made a claim upon the owners of the Scotland, for his lay in that vessel. A suit was commenced, and settlement afterwards made by his proctor, in the absence of the libellant, and without any other authority from him than the retainer of the proctor. Upon this settlement, the proctor gave to the respondent a full discharge of all claims of the libellant. The grounds upon which that settlement was made are stated in the opinion of the court. Upon the libellant's return from another voyage, in 1857, he first learned of the settlement, and thereupon filed the present libel.

R. C. Pitman, for libellant, cited, upon the question of the basis of settlement. Hutchinson v. Coombs, [Case No. 6,955;] The Rovena, Id. 12,090;] as to the advance wages, Emerson v. Howland, [Id. 4,441;] Wells v. Meldrun, [Id. 17,402;] and to the authority of the proctor, Lewis v. Gamage, 1 Pick. 347; Jackson v. Bartlett, 8 Johns. 281; Wilson v. Wadleigh, 36 Me. 496; 2 Greenl. Ev. § 141; Betts, Pr. 10.

Wm. W. Crapo, for respondents, cited, as to the power of proctors, Ben. Adm. 188; Dunl. Adm. 105; The Frederick, 1 Hagg. Adm. 220; Mynn v. Robinson, 2 Hagg. Ecc. 169; The Whilelmine, 1 W. Rob. Adm. 340; Durant v. Durant, 2 Addams, Ecc. 267; The Harriett, [Case No. 6,096.]

SPRAGUE, District Judge. I have first to consider the agreement made at the time of the discharge. The libellant, a boat-steerer of the ship Scotland, was discharged, at a foreign port, upon payment of $5, and being released from what he owed to the ship. The terms upon which a seaman shall be discharged, before the completion of the voyage, are a matter of mutual agreement. A new contract is made in dissolution of the former. And such contract, or settlement, made by a seaman upon his discharge, will be binding on him, if he act freely, and be fairly dealt with. But, in this case, the seaman did not act freely. He was under a species of duress, and the agreement should not deprive him of what was actually due him. He had been treated with unjustifiable harshness, for a very trivial offence. The master, with language of violence and passion, had given orders to his mate to keep the libellant employed in duties not belonging to his office, nor suitable to his station, but which were degrading and humiliating. From the language and conduct of the master, he had good grounds to anticipate undeserved ill treatment, and for that reason he consented to his discharge, upon the terms prescribed by the master. Consent so given should not deprive him of what was actually due him at the time.

In regard to the subsequent settlement, in August, 1854, I have had some doubt. The rule at common law is well settled. An attorney has no power to compromise a claim that is left with him to prosecute. That is matter in the discretion of his client. A mere retainer gives no such power, but a special authority is often given. Have proctors in admiralty any greater authority in this respect? The citations made by the respondent's counsel give some countenance to the idea that proctors have the power he contends for. But I do not think they are sufficient to establish that doctrine. And not finding it established, I am not inclined to introduce it. It would be inconvenient, and not readily apprehended by clients. No one of the cases, or text-books cited, goes to the extent of saying that proctors may release the claim of their client, by receiving less than his due. They say that courts will not uphold settlements made behind the back of the seaman's proctor, under certain circumstances; also, that they are more satisfac-

tory when made with the advice of the proctor, who is better situated to resist undue influence. All this is for the protection of seamen.

It is laid down by Judge Betts, in his Admiralty Practice, and by Mr. Benedict, in his treatise, that after a decree, the proctor cannot release the judgment for a part payment. This is an authority to the extent that, where a certain amount is known to be actually due to the client, the proctor has no authority to receive less, in full discharge. This applies in principle to the present case, there being here a certain amount really due. I am of opinion, that this settlement does not preclude the court from going behind it.

The mere fact of a settlement with the proctor is not, of itself, a sufficient defence. The court will go further, and inquire whether the settlement was such that it ought to be upheld.

In looking into this settlement, I think it proceeded on a manifest error. The proctor intended to receive all that the party could by law recover; he supposed that he had adopted a correct principle. The settlement really proceeds on a mistake. The basis of settlement was this: to allow the libellant his lay in the Scotland, his first ship, for her whole voyage, embracing as well the time after the libellant left the service of the ship, as that while he was on board of her, deducting therefrom what he had earned in the meantime in the Orizimbo. But as his lay on board of the Orizimbo was greater than his lay had been while on board of the Scotland, the result of this mode of settlement was to reduce the claim of the libellant below the sum which he had actually earned while on board the Scotland. This was an error. To that sum he was absolutely entitled. However great his earnings afterward, he would still be entitled to receive what was due him before. Another claim of the libellant, viz., for a wrongful discharge, stands on a different footing. That is a claim for damages consequent upon the discharge. Where such a claim is sustained, the court will give an indemnity; in ascertaining which, they will inquire what the libellant has suffered. If he has had to work or pay his passage home, then the court will pay him for his time and necessary expenses. All that he has lost in time, expenses, or suffering, by the wrongful discharge, he may recover. But if, in fact, he has immediately found another vessel, and earned full wages, then the court say, "You have not suffered any loss of time or wages." But this all goes to the question of damages. The antecedent wages are as much due as a promissory note; the libellant's success subsequent to this wrongful discharge, cannot extinguish or diminish that debt.

Considering, then, that the libellant's proctor had no authority to make the settlement, and that it proceeded upon an error, I must now give to the libellant what he ought, in law and justice, then to have received. In so doing, I shall take care that the respondents do not suffer from that settlement. I shall deduct the whole amount paid by them to the libellant's proctor. He was authorized to receive payment, and what he actually received is to be deemed payment pro tanto. That leaves the respondents in as good a situation as if that settlement had not been made.

As to the three months' wages, they were not taken into account in either of the settlements, but there is no sufficient answer to the claim. It is due by an absolute provision of the statute, [Act Aug. 18, 1856, § 26; 11 Stat. 62,] and the seaman may recover the portion that belongs to him, that is, two months' wages, in this suit.

There is a difficulty in fixing the rate at which his wages shall be estimated. The practice by consuls abroad, in the case of seamen of whale ships, has been to allow $12 per month; what it has been in the case of boat-steerers, or other officers, I do not know. In the present case, I see no better criterion than to take what his average earnings were per month; or, in other words, to extend his lay for two months. I do not mean to say that this rule would be applicable to all cases.

NOTE, [from original report.] After the delivery of the above opinion, objections being made by the libellant to certain items of the account furnished by the respondents, the court disallowed a charge of 2½ per cent. guaranty-commission on sales of oil, and the charges for fitting and discharging ship. The libellant claimed interest from the arrival of the Scotland; but the court only allowed it from the filing of this libel.

---

BATES, (UNITED STATES v.) See Cases Nos. 14,542–14,544.

BATES, (WHEELER v.) See Case No. 17,-492.

BATES COUNTY, (HARSHMAN v.) See Case No. 6,148.

BATLEY, (COLE v.) See Case No. 2,977.

BATON ROUGE, (SPALDING v.) See Case No. 13,200.