Gove *v.* Judson and another.

*(District Court, S. D. New York.* February 8, 1884.)

SHIPPING—SEAMEN—SHIPPING ARTICLES—DISCHARGE—EXTRA WAGES—SECTION 4582.

An American seaman discharged from an American vessel in a foreign port, because the captain "has no funds to pay and could sail no further," will be deemed discharged with his own consent within the meaning and equity of section 4582, which was designed to furnish the seaman, in such cases, with means of return to his own country; and no consul being found in the foreign port nor extra wages paid there, as required, the seaman may maintain an action in admiralty on his return, against the owners, for his two months' extra pay.

In Admiralty.

*J. A. Hyland,* for libelant.

*E. Seymour,* for Sturges, one of the respondents.

BROWN, J. The libelant, an American seaman, in May, 1879, shipped on board the American bark Rocket, then lying at Newcastle, Australia, as first mate, for a voyage to the port of Saigow, Cochin China; thence to such ports as the master might direct, and thence to the United States. The libelant sailed from Newcastle, acting as first mate, and the bark arrived at Saigow in September of the same year. The crew then wanted to be discharged on the ground

of too much pumping, and on the tenth of September all were discharged by the captain, including the libelant; the vessel being then unseaworthy, and the captain stating that "there were no funds to pay with, and that she could sail no further." The libelant at the time demanded extra pay, and to go before the consul, but was told by the captain that there was no consul there; and the libelant, upon inquiry, was unable to find any consul; and only wages up to the time of discharge were paid by the master. As the claim for extra wages is not founded on the shipping articles, the formal defects in their certification and acknowledgment are immaterial. *Dustin* v. *Marray*, 5 Ben. 10. Under section 4582, if a seaman be discharged in a foreign port, with his own consent, three months' pay is required to be paid to the consul, two-thirds of which, by section 4584, are payable to the seaman on engaging his return to the United States. It has been repeatedly held, in this and other courts, that upon such a discharge, if the payment is not made to the consul, the seaman may by suit recover the sum to which he is entitled. *The Hermon*, 1 Low. 515; *Wells* v. *Meldrun*, Blatchf. & H. 344; *The Blohm*, 1 Ben. 228; *The Caroline E. Kelly*, 2 Abb. (U. S.) 160; *Coffin* v. *Weld*, 2 Low. 81. In the case of *Hoffman* v. *Yarrington*, 1 Low. 168, it was held that, under the provisions of the act of August 18, 1856, (Rev. St. § 4583,) extra wages will not be required where the vessel has been condemned as unfit for service from sea-damage arising during the voyage. In the present case there is no evidence that the vessel had been condemned as unfit for service.

It is objected that the evidence shows that the discharge of the libelant was not "with his own consent." What the libelant testifies on that subject is, "My discharge there was not my voluntary act, it was compulsory; by compulsion, I mean the captain told me there was no funds to pay, and could sail no further; I requested the captain to find a consul," etc. This evidence does not show that the libelant's discharge was not, under the circumstance which he explains, "with his own consent," within the meaning of the statute. His discharge was evidently "with his own consent," although that consent was constrained and rendered necessary under the circumstances, and, in that sense, compulsory, because the captain had no funds to pay, and could sail no further; and such duress will not deprive him of his right to extra pay. *Bates* v. *Seabury*, 1 Spr. 433.

The discharge not being within the exception of section 4583, the libelant's claim is evidently within the equity of the statute and its intention to provide American seamen with the means of return to this country; and he is therefore, I think, entitled to a decree for two months' pay, amounting to $80, with interest from the time of filing the libel, September 7, 1881, making $91.60, with costs.