## THE FRANK AND WILLIE.[1]

### SWIFT *et al. v.* THE FRANK AND WILLIE.

(*District Court, S. D. New York.* February 9, 1891.)

1. SEAMEN—WAGES ON VOYAGE BROKEN UP—FOREIGN PORT.
   When a voyage is broken up in a foreign port without fault on the part of the owner of a vessel, seamen shipped under a time contract which has not expired are entitled only to wages up to the date of their return home, and provision for such return, in the absence of proof or probability of further damage.
2. SAME—DISCHARGE OF SEAMEN—SALE OF VESSEL BY MARSHAL.
   When a suit was brought against a vessel for a claim largely in excess of her value, and her owner allowed her to be sold without attempting to bond, and thereupon discharged the seamen, it was *held* not to be a case of wrongful discharge, but a breaking up of the voyage through misfortune.

In Admiralty. Suit for seamen's wages.
*Hyland & Zabriskie*, for libelants.
*E. G. Benedict*, for respondent.

BROWN, J. The libelants, seamen on the small British schooner The Frank and Willie, shipped on board at New Brunswick September 15, 1890, for a term of six months, to be returned at St. Johns. On the first voyage to New York, upon discharging the schooner, a seaman

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

sustained considerable personal injury through alleged negligence in stowage and the manner of discharging the cargo, for which she was libeled and seized in New York upon a claim of $5,000 damages, and sold by the marshal, in consequence of which the voyage was broken up, and the libelant seamen were discharged on the 4th of October. On the same day the master offered to pay them their wages up to that day, and to ship them on board an American vessel going to St. Johns under current wages, which after consideration they refused, and subsequently filed the present libel, claiming wages for the full period of six months, which has not yet expired.

It is unnecessary to refer to the numerous and diverse cases cited by the libelants' counsel in the elaborate brief presented. The observations of Mr. Justice STORY in the case of *Emerson* v. *Howland*, 1 Mason, 45, are, I think, applicable to them all, and state the principle that should control the present case. The apparent contrarieties in the different cases, even of an illegal discharge, he says—

"Are easily reconcilable when the circumstances of each case are carefully examined. In all cases a compensation is intended to be allowed which shall be a complete indemnity for the illegal discharge, and this is ordinarily measured by the loss of time and expense incurred by the party. It is presumed that after his return home, or after the lapse of a reasonable time for that purpose, a seaman may without loss engage in the service of other persons; and, where this happens to be the case, wages are allowed only until his return, although the voyage may not then have terminated."

*Fee* v. *Orient*, 36 Fed. Rep. 509, 44 Fed. Rep. 430.

If such is the rule even in the case of an illegal discharge, or in case of the willful neglect of a seaman in a foreign port, as in *Farrell* v. *French*, Blatchf. & H. 275, much more should this rule govern in a case like the present, where no personal fault can be imputed to the owners, as between them and the seaman, in respect to the large damage claim for which the vessel was arrested, and the consequent breaking up of the voyage.

The claim and the lien here sought to be enforced are mostly not for wages strictly, because, after discharge on the breaking up of the voyage, there is no further service to the ship. Still compensation in damages for the breach of a maritime contract may be given so far as the facts justify it. But even at common law such damages are not allowed to compensate for voluntary idleness. A shipment by seamen for a time named, instead of for the voyage, is moreover by its very nature not an absolute engagement for the time specified. It differs materially from ordinary time contracts on land. The seaman is bound to the particular ship only. He cannot be transferred to service on another ship without his consent. The loss or disability of the ship, therefore, of itself terminates the contract. There is no difference in this respect between a seaman's time shipment and a shipment for the voyage. Every such shipment in either form is legally liable to be broken up before completion by sea perils, or other incidents of commerce and navigation, and whenever the general interests require it, under the special cir-

cumstances. *Hoffman v. Yarrington*, 1 Low. 168. The British and American statutes recognize this right, and make certain provisions for it. The shipping articles in the present case recognize the same principles by expressly providing that if the vessel be laid up in the dominion of Canada the crew shall "be paid off without extra wages;" and yet this suit was instituted solely for extra wages. The articles also say that, if the crew claimed a discharge in the United States, they were to be paid off at the rate of five dollars per month, or about one-fifth of the shipping rate. This is not the case of a willful and wrongful discharge, but of a breaking up of the voyage through accident and misfortune. It is said that the owners might have bonded the schooner when she was seized by the marshal, and so fulfilled the seamen's contract. But they were not bound to do so merely to give the crew six months' employment; and it is not credible that the schooner was voluntarily allowed to be sold for the purpose of getting rid of the seamen. In the absence of all evidence on the subject, it must be assumed either that the foreign owners were unable to get security here, or that the other circumstances made a sale necessary. Whatever the cause, the same rule applies as upon a similar breaking up of the voyage before completion on an ordinary shipment.

There is no evidence of any improper conduct on the part of either the owners or the master; and, aside from the provisions of the articles above cited, the vessel is not liable to seamen for wages or for damages, when the voyage is broken up under such circumstances, beyond provision for the return of the seamen to their homes, and the payment of wages to that time, in the absence of proof of further damage. *Hindman v. Shaw*, 2 Pet. Adm. 264; *The Oder*, Id. 262; *Emerson v. Howland, supra.* See *The Adolph*, 7 Fed. Rep. 501; *The Raffaelluccia*, 3 Asp. 505. This gives full indemnity to them to that time, and there is no evidence of damages beyond. It is not suggested that there was any difficulty in procuring service for the remainder of the contract term at equally good wages. Wages on American vessels are notoriously higher than on British; and in fact the circumstances justify the suspicion that the refusal of the seamen in this case to return to St. Johns was for the same reason suggested in the case of the Italian ship last above cited, namely, because they wished to ship in other vessels here at a higher rate of wages than they would get at St. Johns. A court of admiralty will, as far as possible, enforce the right of seamen to an equitable compensation or indemnity for any actual loss. But the master's offer in this case fully met this requirement, and complied with the spirit of the articles. There is neither proof nor probability of any further loss by the seamen, except by voluntary idleness. Their attempt to enforce more than was offered them was, I think, inequitable, and an attempt to profit by the ship's misfortune. I therefore allow them their wages up to the day of discharge, without costs.