## SAMUEL GOURLEY AND REDMOND P. DORAN *v.* MATSON NAVIGATION COMPANY, a corporation.

### DECIDED: JULY 25, 1903.

1. Upon the trial of a libel *in personam* against the owner of a steam vessel for wages due libellants and for damages for breach of contract, where it appeared that libellants had been engaged by one Baker, acting as the agent of the defendant for this transaction alone, to go from Honolulu to Hilo to take charge of the steam vessel "Counselman" and bring her down to Hilo as captain and first officer respectively, but upon arriving at Hilo, where the vessel lay, one Guard, the agent of the defendant in charge of the vessel there, refused to recognize the employment of the libellants in the capacities indicated, or at all; *Held,* that under the facts as shown in this case, the employment of the libellants was within the scope of the authority of Baker; that the contract was for libellants to go to Hilo and bring the "Counselman" to Honolulu; and upon the failure of the defendant to carry out its part of the contract through the action of its agent at Hilo, a right of action accrued to libellants to recover damages for such breach.
2. It is a well-known principle of the admiralty law that when a seaman is discharged before the commencement of the voyage, he is entitled not alone to his wages, but to a reasonable measure of damages, for which the owners of the ship are liable.
3. Claims for wages are very highly favored by courts of admiralty; and discharges, unless for more serious reasons than appear from the facts in this case, are not to be justified.

IN ADMIRALTY.    LIBEL *in personam* FOR WAGES AND DAMAGES
                 FOR BREACH OF CONTRACT.

*J. J. Dunne*, attorney for libellants.
*Holmes & Stanley*, attorneys for defendant.

ESTEE, J.    This is a libel *in personam* for wages due to libellants from the corporation defendant and for damages for breach of the contract between defendant and libellants.

The facts appear to be these:    The owner of the steam vessel "Charles Counselman" wanted to run her over from Hilo, on the Island of Hawaii, to Honolulu, on the Island of Oahu, a distance of some two hundred and twenty-nine miles, to place said steam vessel on the ways for repairs, and she had to be properly officered for that purpose.    Mr. Guard, the agent of the defendant at Hilo, wrote from there to Mr. Baker in Honolulu, directing him to hire for him an assistant engineer and a first officer who would have proper papers to take the vessel down to Honolulu.    Mr. Baker, on the eighth of June, engaged Captain Redmond P. Doran to act as the first officer of said vessel, and agreed to send him over to Hilo on the "Kinau," leaving on the 9th.    On the morning of the 9th of June, Captain Doran said to Mr. Baker, that as Captain Petersen, then in command of the "Counselman," was not a member of the Masters' and Pilots' Association that he did not think he could sail under him as first officer.    Whereupon, Baker told him to get someone else to go with him as first officer and he could go as captain.    Gourley, the other libellant, was found and agreed to go.    Baker testified that he engaged Doran to act as the captain of the "Counselman" on the contemplated trip and Gourley as mate for the same trip. He paid their passage to Hilo on the "Kinau."

When libellants reached Hilo, Guard said that he did not wish a captain; that he could get a mate in five minutes, which he proceeded to do, and refused to consider the libellants as engaged to make the run to Honolulu for that trip.    Libellants then took passage on the "Kinau," returning to Honolulu, each guaranteeing to pay the transportation of $12.50 apiece and passage was granted them on those terms through the courtesy of the

Wilder Steamship Co., as they would otherwise have been stranded at Hilo, some two hundred odd miles from their home port. When they reached Honolulu, on the 13th of June, they went to Mr. Baker for their pay; he said he would write to Guard. They waited for the return mail from Hilo on the 20th, when they were informed by Baker that he could not pay them and that they would have to wait to get the decision of Mr. Matson, the president of the defendant, to whom the matter had been referred. They waited, and on the 29th of June they were finally told that the company would not make any settlement with them, and this suit was instituted.

Mr. Baker testified at the trial, that Captain Doran told him that Captain Petersen, then in charge of the "Counselman," was not a member of the Masters' and Pilots' Association and he could not take the position of mate under him. Captain Parker and Captain Seike, who were present at the time, both said that Captain Petersen was not a member of the Association referred to. "I requested," said Baker, "that he, Captain Doran, go and get some other person who had a mate's papers to go up with him and bring the vessel down. I did that because the Inter-Island telegraph was not working that day, and so I could not communicate with Hilo. I had received advices to telegraph Mr. Guard of the sailing of the 'Kinau,' and advise him, Guard, of the sailing of the men to bring the ship down."

"Q. By the Court: So you engaged them both?

A. Yes; I wrote Guard on June 9th.

Q. By the Court: They knew then?

A. Yes.

Q. The men went at your request?

A. Yes.

Q. To bring the ship from Hilo to this port?

A. From Hilo.

Q. They had no other engagement than to bring the ship from Hilo?

A. Just the voyage from Hilo to Honolulu.

Q. By Judge Stanley: Had you at any of the times men-

tioned in the libel, any connection with the Matson Navigation Company, except in the hiring of these men for the company?
A. No, sir."

So he further testified in reply to a question by Mr. Dunne:
"Q.   You said you employed both Doran and Gourley?
A.   Yes.

Q.   As I understand it, you employed both of them after you learned that if Captain Doran went as mate there might be trouble with the Association on account of Captain Petersen not being a member of the Masters' and Pilots' Association—is that correct?
A.   Yes.

Q.   Then it was that you employed both of them, that is correct?
A.   That is correct.

Q.   You employed Doran as master and Mr. Gourley as mate?
A.   Yes."

It seems perfectly clear to the Court that Mr. Baker hired Doran and Gourley in the capacities claimed by them. He knew that a man had to have a license from the United States to act as captain or mate of any steam vessel plying between these islands, and he was informed by both Captains Parker and Seike that the captain of the "Counselman" was not a member of the Association, and so he thought he would send two licensed men over to bring this vessel down. There was doubtless some misunderstanding between Gourley and Baker, but Baker evidently thought he was acting within his discretion when he did this. In fact, Guard had written him, "You are to have full charge of the boat; telegraph me when the men will be here." Defendant's Exhibit 2.

The law is not very technical in the matter of the hiring of seamen to serve on short voyages on vessels engaged in the coasting trade, and I am compelled to believe from all the circumstances of the case, that Mr. Baker was acting within the scope of his powers when he engaged libellants in this case; and that they were, therefore, wrongfully discharged by Guard, the agent of the company at Hilo. Claims for wages are very highly

favored in courts of admiralty and discharges unless for more serious reasons than appear from the facts in this case, are not to be justified. *The Idlehour,* 63 Fed. 108.

These libellants went over to Hilo in good faith and they were ready and willing to go to work on the "Counselman" in their respective capacities of captain and mate for the purpose of bringing the "Counselman" from Hilo to Honolulu. This was the character of the contract into which they entered; and upon the failure on the part of defendant to carry out its part of said contract, through the actions of its agent at Hilo, a right of action accrued to libellants to recover damages for such breach. *Pierce v. Tennessee Coal & Railroad Co.,* 173 U. S. 1, 15.

It is a well known principle of the admiralty law, that when a seaman is discharged before the commencement of the voyage, he is entitled not alone to his wages, but to a reasonable measure of damages for which the owners of the ship are liable. *Hindman v. Shaw,* 2 Pet. Adm. 264, Fed. Case No. 6514; *Hart v. Littlejohn,* I Pet. Adm. 115, Fed. Case No. 6153; *Woolf v. Oder,* 2 Pet. Adm. 261, Fed. Case No. 18,027; *The Ocean Spray,* 4 Sawy. 105.

It appears from the facts in this case that the time consumed by the libellants in going from Honolulu to Hilo, in pursuance of this contract and return to Honolulu was five days. Under the contract, Doran was to be paid at the rate of $150 a month, or $5 a day, and Gourley at $90 a month, or $3 a day, the regular Association wages for master and first officer of vessels. I, therefore, allow Doran $25 and Gourley $15 for the amount which would have been actually paid them if the contract had been fulfilled. Each of said libellants has made himself responsible for the cost of transportation from Hilo to Honolulu, at the rate of $12.50 apiece. I will allow each of them that amount in addition to the $25 and $15 respectively.

As was said by the Supreme Court of the United States in the case of *U. S. v. Bader,* 110 U. S. 338—

"Unless there is some artificial rule which has taken the place of natural justice in relation to the measure of damages, it would

seem to be quite clear that the claimant ought at least to be made whole for his losses and expenditures."·

In addition to the foregoing, I will allow each of the libellants the sum of twenty dollars in full of all damages for the delay in the settlement of their just claims against the defendant corporation, which delay was utterly unreasonable under the circumstances of this case. I shall allow nothing for room rent or board during the period after the arrival of the libellants in Honolulu and the institution of this suit. To Doran, therefore, the full sum of $57.50 is allowed; to Gourley, the full sum of $47.50; together with costs of suit.

Let a decree be entered in accordance herewith.